## L. A. FREEMAN v. S. H. TERRELL, COMPTROLLER.

### No. 4504. Decided June 9, 1926.

### (284 S. W., 946).

**1.—Statute—Prospective Operation.**

Acts of the Legislature speak prospectively and operate generally, in fixing fees of public officers, only on compensation for services performed after the statute takes effect, if such compensation for services before and after can be separately determined. (P. 533).

**2.—Same—Assessment of Taxes—Compensation—Statute.**

The Act of March 30, 1925, Laws, 39th Leg., ch. 150, p. 358, taking effect June 18, 1925, and increasing the compensation of a

tax assessor, applied to and governed the fees allowed him for assessing the taxes for that year, though a part of his services in so doing was necessarily performed before the Act took effect, and part thereafter. (Pp. 532-537).

3.—Same.

The Act of March 30, 1925, fixed the assessor's compensation for the assessment for the year as a whole and provided no means for apportioning the increased compensation between work done before and that done after the law took effect. That performed before, the receiving renditions of property from taxpayers, was a minor part of the entire work required of him, which was not completed till September 15, of that year. The Act must be held to contemplate the attaching of the increased compensation to his work as a whole for the year 1925, as well as that for following years. (Pp. 536, 537).

Original application by Freeman to the Supreme Court for writ of mandamus against Terrell as State Comptroller.

The Supreme Court referred the application to the Commission of Appeals, Section B, for its opinion thereon, and here adopts same and grants the writ as there recommended.

*R. K. Hanger,* for applicant.

The services performed by a tax assessor are not separate and distinct from each other, but must be considered as a whole in order that a valid assessment be made.

Where a law regulating the compensation of officers is amended and the compensation is thereby increased, and the services rendered by said officer are not performed or completed until long after said amendment becomes effective, the said officer is entitled to the compensation allowed him under the amendment.

*Dan Moody,* Attorney-General, and *L. C. Sutton,* Assistant, for respondent.

The Act of the 39th Legislature increasing the rate of commissions of the tax assessor speaks prospectively and not retrospectively, and applies only to assessments taken by the assessor subsequent to its taking effect, and therefore does not apply to 1925 assessments taken by the assessor between January 1, 1925 and April 30, 1925, in compliance with Article 7189, R. S., 1925.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

Relator was the duly elected, qualified and acting tax assessor in and for Tarrant County, Texas, during the year 1925.

Respondent is Comptroller of public accounts of the State of Texas and was holding said office when this controversy arose. It is admitted that relator faithfully performed his official duties, as prescribed by law, during the year 1925. Respondent paid him for all such services that year his commissions as provided in Article 7583, Complete Texas Statutes of 1920. Relator contends he should have been paid under the Act of 1925, effective June 18, that year, which reads as follows:

"Each assessor of taxes shall receive the following compensation for his services, which shall be estimated upon the total value of the property assessed as follows: For assessing the state and county taxes: on all sums for the first two million ($2,000,000.00) dollars, or less, five cents (5c) for each one hundred ($100.00) dollars of property assessed; on all sums in excess of two million ($2,000,000.00) dollars, and less than five million ($5,000,000.00) dollars, two and one-half (2½) cents on each one hundred ($100.00) dollars, and on all sums in excess of five million ($5,000,000.00) dollars, two and one-fourth (2¼) cents on each one hundred ($100.00) dollars; one-half of the above fee shall be paid by the State and one-half by the county; for assessing the taxes in all drainage districts, road districts, or other political sub-divisions of the county, the assessor shall be paid three-fifths (3-5) of one cent for each one hundred ($100.00) dollars of the assessed values of such districts or subdivisions; provided such compensation as is paid to the assessor shall be prorated among the various drainage districts, road districts and other political subdivisions of the county according to the value of the property assessed in each district, or other political subdivision; and for assessing the poll tax, five cents (5c) for each poll, which shall be paid by the State.

"The commissioners' court shall allow the assessor of taxes such sums of money to be paid monthly from the county treasury, as may be necessary to pay for clerical work, taking assessments and making out the tax rolls of the county, (such sums as allowed to be deducted from the amount allowed to the assessor as compensation upon the completion of said tax rolls); provided, the amount allowed the assessor by the commissioners' court shall not exceed the compensation that may be due by county to him for assessing. (Acts 1925, p. 358, Art. 3937.)

The quoted Act differed from its predecessor only in increasing the compensation of this county officer. Under the

Act of 1925 relator was entitled to an additional sum of $3,865.83. Respondent refused to allow this additional amount and this is an action in mandamus filed originally in the Supreme Court by relator to compel respondent to pay aforesaid additional sum to him as fees of office.

The material contentions of relator are as follows:

"1. The services performed by a tax assessor are not separate and distinct from each other, but must be considered as a whole in order that a valid assessment be made.

"2. Where a law regulating the compensation of officers is amended and the compensation is thereby increased, and the services rendered by said officer are not performed or completed until long after said amendment becomes effective, the said officer is entitled to the compensation allowed him under the amendment."

The answer filed by respondent and his brief likewise submit but one counter-proposition as follows:

"The Act of the 39th Legislature increasing the rate of commissions of the tax assessor speaks prospectively and not retrospectively, and applies only to assessments taken by the assessor subsequent to its taking effect, and therefore does not apply to 1925 assessments taken by the assessor between January 1, 1925, and April 30, 1925, in compliance with Article 7189, R. S., 1925."

We take no issue with this counter-proposition. It is true that laws speak prospectively, "unless the contrary is clearly indicated." Counsel for relator do not contest this principle of law and ask that the statute involved be given a prospective effect.

It is also true, beyond question, that if all the *material* services of a tax assessor for 1925 had been completed before June 18 of that year, he would have been paid under the old rate. There could be no controversy upon this point.

But, we think counsel for respondent err in concluding that this compensation is *solely* for work of the assessor required under Article 7189 aforesaid, reading as follows:

"Art. 7189. When Assessments Made.—Assessors of taxes shall, between the first day of January and the thirtieth day of April of each year, proceed to take a list of taxable property, real and personal, in his county and assess the value thereof in the manner following, to-wit: By calling upon the person, or by calling at the office, place of business or the residence of the person, and listing the property required by law in his name, and requiring such person to make a

statement under said oath of such property in the form hereinafter prescribed. (Acts 1876, p. 265; Acts 1909, p. 373; G. L., Vol. 8, p. 1103)."

Respondent seems to be of the view that the taking of this *rendition* from each citizen constitutes all the duties of the assessor's office except what counsel chooses to denominate as mere "incidental duties." We think his work after April 30, 1925, as defined by statute, was equal to, if not more, than the duties prescribed in Article 7189, supra. At any rate, the duties subsequent to the taking of the renditions were very material. If we are correct in that view, we are not quite sure that respondent entertains a view contrary to ours. If he does, we think he is in error.

The duties of the tax assessor, in addition to those prescribed by Article 7189, are summarized by counsel for relator in his brief as follows:

"Under Article 7201, the assessor is required to obtain a certificate from the board of equalization as to the completeness of the assessment before the comptroller is authorized in issuing the assessor a draft upon the tax collector for his remuneration. It is also provided that the same rule with reference to the approval of the board of equalization shall apply to the commissioners' court before they issue any draft for payment by the county treasurer for assessing county taxes.

"Under Article 7218, the assessor shall submit all lists of property rendered to him prior to the first Monday in June to the board of equalization, of his county, on the first Monday in June or as soon thereafter as practicable, for his inspection, approval, correction or equalization. In this case the board of equalization of Tarrant County did not accept or approve, and did not complete their inspection, correction or equalization until September 15, 1925.

"It will also be noted from Article 7218, that after the board of equalization shall have returned the corrected and approved list of taxable property, the assessor of taxes shall proceed to assess all the unrendered property of this county as provided for in this title; and shall proceed to make out and prepare his rolls or books of all the real and personal property listed to him in the form and manner prescribed by the comptroller. In addition to this, Article 7219 provides that as soon as the board of equalization shall have examined, corrected and approved the assessor's lists, the assessor of taxes shall prepare and make out a roll or book, as may be required by the comptroller, from the list so corrected and

approved, and three exact copies of the same, the original to be furnished to the collector of taxes, the second to the comptroller, and the third to be filed in the county clerk's office for the inspection of the public. And that he shall also prepare a roll or book and two exact copies thereof, to be distributed, the first to the collector of taxes, the second to the comptroller, and the third to be filed in the county clerk's office, of all the real and personal property which has not been listed to him. And Article 7220 requires the assessor of taxes, after his list of unrendered real and personal property shall have been examined, corrected and approved by the board of equalization, as required by law, to prepare and make out his rolls or books of all unrendered real and personal property listed by him in the manner and form prescribed by the comptroller; and Article 7221 requires that the assessor of taxes shall add up and note the aggregate of each column on his roll or book, and he shall also make in each roll or book, under proper headings, a tabular statement showing the footings of the several columns upon each page, and he shall add up and set down under the respective headings the total of the several columns.

"From these articles it can be readily seen that the assessor of taxes does not complete the work of assessment, either of the rendered or of the unrendered property, until he has complied with the requirements of these articles, and could not and does not make a valid assessment against taxable property until long after the 18th day of June, 1925.

"Under Section 4 of Article 7206, it is provided that after the board of equalization have inspected and equalized, as nearly as possible, they shall approve said lists and books and return same to the assessors for making up the general rolls, when said board shall meet again and approve the same, if same be found correct. In other words, the assessor of taxes can not begin to prepare the general rolls of taxable property, rendered or unrendered, until the board of equalization have approved said lists or books, and further, after said general rolls are prepared by the assessor the board of equalization must, in order to constitute and make a valid assessment against such taxable property, meet again and approve such general rolls. In this connection, before an assessment becomes valid it is necessary for the collector to make a return of said rolls, and to authenticate the same by an affidavit, as required by Article 7222."

As showing the duties of the tax assessor are in no sense

*complete* before June 18, we quote further from the same brief as follows:

"In this connection it will be noted that the assessor of taxes in a given county is not required to give any estimate of the valuation to the comptroller, in order that the State Tax Board may fix the state tax rate, until July 15th of each year. Art. 7042, Revised Civil Statutes, 1925. And that the State Tax Board does not fix the State tax rate until July 20th of each year, under Art. 7043.

"Article 7044 provides that as soon as the tax assessor has received notice of such rate, he shall calculate the taxes due the State for State purposes, and also the taxes due for public free school purposes on all taxable property within his county, and shall carry the same out on the copies of the tax rolls of the county, to be delivered to the tax collector and to the county clerk and to be returned to the comptroller.

"Article 7045 provides that the county tax rate may be fixed at any time after the tax assessors of their respective counties have forwarded to the comptroller the certificate required, and prior to the time when the tax collector of such county shall have begun to make out his receipts."

A mere reading of these various duties, prescribed by statute, is convincing that the tax collector has but made a good beginning when he gathers the renditions of property for taxation.

The undisputed statement in the pleadings is that the relator did not complete his official duties until September 15, 1925, about ninety days subsequent to the taking effect of the new fee statute. The services prior to April 30 related only to the taking of renditions as heretofore stated. There was in no sense a valid and binding *assessment* on April 30, 1925. All the authorities so hold. The assessment duties of this county official are not complete until the various services above outlined have been performed.

The fee statute provides a certain per cent of assessed valuations as pay for the assessor's *"services."* The compensation is not for taking renditions only. The statute does not say he shall receive so much for part of his work and something else for other official duties. If the compensation was divisible, it would be possible to apply the 1920 fee statute to part of relator's account and the 1925 law to other portions thereof. But, since it is impossible to place a value upon his several services, it must be assumed that the Legislature intended to apply the new rate to his 1925

services as a whole. This is all the more reasonable a conclusion in view of the fact that the Legislature knew he could not present his bill for services until the Fall of 1925. At the time his accounts became due, the new rate was effective. If the Legislature had intended to apply one rate to a part of the account and another to the other, then it should have provided a method for doing so. It should have placed a value on each part of the work. Not having done so, we hold there was no such intention on the part of the lawmakers. We think this official should be paid under the 1925 statute. We have found no authority covering this situation and counsel cite none. We assume that no attorney in this case has found any authority in point.

We think the mandamus should issue as prayed for and we so recommend.

Opinion of the Commission of Appeals approved and mandamus awarded.

*C. M. Cureton,* Chief Justice.