

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 20, 1951.

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1354

Re: Application of S.B. 118,
Acts 52nd Leg., R.S.
1951, ch. 60, p. 94, re-
quiring the recording of
contracts between State
agencies and the Federal

Dear Sir:                    government.

You have requested an opinion of this office
regarding the legal effect to be given the provisions
of Senate Bill 118, Acts 52nd Leg., R.S. 1951, ch. 60,
p. 94, which read:

"Section 1. When an agency or polit-
ical subdivision of the State government
has entered into a contract or agreement
with the Federal government, such State
agency or political subdivision shall file
a copy of such contract or agreement with
the Secretary of State for recording.
Such State agency shall not encumber or ex-
pend any Federal funds received through
such contracts or agreements until said
copy is filed with the Secretary of State.
Provided that copies of research contracts
'classified' in the interest of national
security shall not be filed, but in lieu
thereof a statement that such a contract
has been made shall be filed."

A similar provision is contained in a rider
in the general appropriation bill for the biennium
ending August 31, 1953. H.B. 426, Acts 52nd Leg., R.S.
1951, ch. 499, p. 1228, at p. 1434. Since this rider
merely parallels the general statute and in no way con-
flicts therewith, we shall consider only the effect of
Senate Bill 118, supra.

On the basis of these statutory provisions, you have asked the following questions:

(1) "Would these Federal funds placed in the State Treasury prior to the 52nd Legislature be governed by the requirements of the two above mentioned Acts?"

(2) "Would funds placed in the State Treasury after the effective dates of S.B. No. 118 and H.B. No. 426, but obtained under contract or agreement dated prior to September 1, 1951, be governed by the above mentioned legislation?"

(3) "What action should this department take concerning accounts presented for payment out of funds which do come under the provisions of S.B. No. 118 and H.B. No. 426 but were incurred prior to the filing of a contract or agreement with the Secretary of State?"

The main problem presented by your request is a determination of the meaning of the language, "When an agency or political subdivision of the State government has entered into a contract or agreement with the Federal government." We must determine whether the Legislature intended this statute to apply only to contracts which had been entered into prior to the effective date of Senate Bill 118, or only to contracts made on or after that date, or to all contracts under which State agencies receive Federal funds, regardless of the date of the contract.

The general rule is that statutes will be construed to operate prospectively unless the contrary is clearly indicated. Freeman v. Terrell, 115 Tex. 530, 284 S.W. 946 (1926). But they may operate retrospectively when it is apparent that such was the intention, "provided no impairment of vested rights result." American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715, 720 (1931).

The general rule as to retrospective application of legislation is stated in State v. Humble Oil & Refining Co., 141 Tex. 40, 169 S.W.2d 707, 708 (1943), as follows:

". . . It is the law of this State,
and the law generally, that, in the ab-
sence of any special indication or reason,
a statute will not be applied retrospec-
tively, even when there is no constitution-
al impediment against it. Stated in an-
other way, it is the rule that statutes
will not be applied retrospectively unless
it appears by fair implication from the
language used that it was the intention of
the Legislature to make it applicable to
both past and future transactions."

In that case the court held that a statute providing
for a credit against current taxes where a taxpayer
"has erroneously paid more taxes than were due dur-
ing any tax paying period" did not apply to overpay-
ments made prior to the effective date of the statute.
However, each statute must be construed in the light
of its own peculiar wording and the legislative pur-
pose in enacting it. As stated in Connecticut Mut.
Life Ins. Co. v. Talbot, 113 Ind. 373, 14 N.E. 586
(1887), "a statute must be so construed as to make it
effect the evident purpose for which it was enacted;
and if the reason of the statute extends to past
transactions as well as to those in the future, then
it will be so applied, although the statute does not,
in terms, so direct, unless to do so would impair
some vested right, or violate some constitutional guar-
anty." See Cox v. Robison, 105 Tex. 426, 150 S.W. 1149,
1156 (1912).

A determination of the meaning of the phrase
"has entered into a contract" is aided by the emergency
clause of Senate Bill 118, which indicates the purpose
of the Legislature in enacting this statute. Although
an emergency clause cannot limit or enlarge unambiguous
language in the body of an act, it may be considered in
determining the meaning of ambiguous expressions.
Decker v. Williams, 215 S.W.2d 679 (Tex. Civ. App. 1948,
error ref.); Lloyds Casualty Co. of New York v. Lem, 62
S.W.2d 497 (Tex. Civ. App. 1933, error dism.); Huntsville
Independent School Dist. v. McAdams, 148 Tex. 120, 221
S.W.2d 546 (1949). The emergency clause reads:

"The fact that sound budgeting pro-
cedure requires that the Legislature have

> knowledge of the funds that State agen-
> cies expect to receive from the Federal
> government, and the fact that the Leg-
> islature should know the conditions con-
> tained in contracts between State agen-
> cies and the Federal government, create
> an emergency . . .."

The necessity for knowledge of these facts exists
equally with respect to prior contracts and to con-
tracts entered into subsequent to the effective
date of the statute.

When all the provisions of Senate Bill 118
are considered together, we are of the opinion that
the statute requires the filing of copies of all con-
tracts under which funds received from the Federal
government are to be expended, regardless of the date
of the contract.  This construction of the phrase "has
entered into a contract" is supported by the decisions
in Gilbert v. Lebanon Valley St. Ry., 300 Pa. 384, 150
Atl. 638 (1930); Russell v. Mechanics' Realty Co., 88
N.J.L. 532, 96 Atl. 657 (1916); and Coit v. Comstock,
51 Conn. 352 (1884).

We must next determine whether such a con-
struction of the statute violates any constitutional
provision.  Section 16, Article I, Constitution of
Texas, provides:

> "No bill of attainder, ex post facto
> law, retroactive law, or any law impair-
> ing the obligation of contracts, shall be
> made."

Similar restrictions on State legislation result from
Section 10, Article I of the Federal Constitution and
the Fourteenth Amendment to the Federal Constitution.
See 50 Am. Jur. 492, Statutes, Sec. 475.

The distinction between "retroactive" laws
which are prohibited and retrospective laws which are
not prohibited has been discussed in numerous Texas
cases.  See Kelly v. Republic Building & Loan Ass'n,
34 S.W.2d 924 (Tex. Civ. App. 1930), for a partial col-
lection of authorities.  From a consideration of the
decisions, we are of the opinion that Senate Bill 118
is not retroactive in the prohibited sense.

The first sentence of Senate Bill 118 designates the contracts which must be filed with the Secretary of State. The second sentence states the consequence of a failure to file the required copy, as follows: "Such agency shall not encumber or expend any Federal funds received through such contracts or agreements until said copy is filed with the Secretary of State." The statute does not attempt to invalidate contracts entered into either before or after its effective date, nor does it prohibit the State agency from receiving funds from the Federal government under any of these contracts. It becomes apparent that the Legislature is regulating the encumbering or expending of funds received under the contracts rather than the making of the contracts themselves. The transactions affected by the statute are contracts between the State agency and persons having claims against the funds. The statute does not operate retroactively to impair the obligation of these contracts, since it affects only the encumbering or expending of funds after its effective date. The existence of the agreement between the State agency and the Federal government under which the agency receives the funds is merely an antecedent circumstance affecting the agency's ability to expend the funds.

In 50 Am. Jur. 493, Statutes, Sec. 476, the following rule is stated:

"A statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation."

Also see 59 C.J. 1158, Statutes, Sec. 690 and cases there cited; City of Sour Lake v. Branch, 6 F.2d 355 (C.C.A. 5th 1925). The effect of the holdings in a number of Texas cases is in accord with this rule. Washington Oil Corporation of Texas v. State, 159 S.W. 2d 517 (Tex. Civ. App. 1941, error ref.), held that a tax assessed on the basis of conditions or transactions which occurred prior to the effective date of the statute did not violate this provision of the State Constitution. Similarly, City of San Antonio v. Baird, 209 S.W.2d 224 (Tex. Civ. App. 1948, error ref.), held that years of service qualifying a city employee for higher pay may be service either before or after the effective date of the statute defining the employee's rights.

American Surety Co. v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715 (1931), is parallel in many respects to the present situation. In that case a contract of suretyship between the contractor on a public building and the surety company was entered into on August 8, 1927, pursuant to a statute requiring the contractor to furnish a bond for the prompt payment of claims for labor and material. By an amendment to the statute which became effective September 5, 1927, persons seeking to recover on the bond were required to file an itemized claim within 30 days after the labor or material was furnished. The court held that the amendment operated on claims for material furnished after the effective date, although the bond against which recovery was sought was made prior to that date. While the materialman's rights arose out of the contract of suretyship, he had no vested right in the bond prior to the time he furnished the materials. The court expressly held that the statute did not violate the provisions of the State or Federal Constitutions against the enactment of retroactive laws or laws impairing the obligation of contracts.

In view of the foregoing authorities, we are of the opinion that Senate Bill 118 does not operate retroactively nor does it impair the obligation of contracts in violation of constitutional provisions.

Since Senate Bill 118 regulates the encumbering or expending of funds after its effective date, regardless of the date on which the contract with the Federal government was made or the funds were received, your first two questions are answered as follows: All Federal funds in the State Treasury on or after September 7, 1951, are governed by the requirements of Senate Bill 118. In connection with your first question, relative to funds received prior to the effective date of Senate Bill 118, it is noted that the emergency clause of this act refers to funds which the State agencies expect to receive. However, the body of the act provides in unambiguous language that the agency shall not encumber or expend any Federal funds received through such contracts until a copy of the contract is filed with the Secretary of State. This provision may not be varied by the recital in the emergency clause. Decker v. Williams, supra.

In your third question you ask what action your department should take concerning accounts presented for payment out of funds coming within the provisions of Senate Bill 118 which were incurred prior to the filing of a contract or agreement with the Secretary of State.

The language of Senate Bill 118 that a State agency "shall not encumber or expend any Federal funds . . . until said copy is filed" is mandatory. In First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S.W. 550, 551 (1921), the Supreme Court construed an analogous statutory provision as mandatory, stating:

> "The emphatic language that 'no policy of life insurance' shall be issued or delivered in this state, containing prohibited provisions, does not admit of the construction that life insurance policies may be issued containing the prohibited provisions . . ."

Similarly, the language here does not admit of the construction that Federal contracts need not be filed prior to encumbering or expending the funds. Since money in the State Treasury may not be expended except on warrant drawn by you, your department must be satisfied that the statutory provision in respect to the expending of funds has been complied with prior to issuing a warrant.

However, we are of the opinion that your duties in issuing warrants relate only to the expending of these funds and that you would be under a duty to ascertain only whether the contract was filed prior to the issuance of the warrant. At times in the past the Legislature placed upon the Comptroller certain duties with respect to the encumbrance of funds. Acts 47th Leg., R.S. 1941, ch. 571, p. 1114, at p. 1286; Acts 48th Leg., 1943, ch. 400, p. 885, at p. 1019. But at the present time there is no statute requiring the Comptroller to approve or otherwise act upon the encumbering of funds. We think the failure of the Legislature to continue to impose these duties on the Comptroller indicates that he is not responsible for the manner in which the funds are encumbered.

It should be noted that claims incurred prior to the effective date of Senate Bill 118 but not presented

for payment until after that date are not included in the prohibition of the statute.  While the Legislature has used the language "encumbered or expended," a construction which would require the filing of the governmental contract before payment of a claim incurred prior to the effective date of the statute would impair the obligation of the contract between the agency and the claimant.  Since the Legislature is presumed to have been cognizant of constitutional provisions and to have intended the enactment of valid legislation, we cannot ascribe to the Legislature an intention to place a restriction upon the payment of claims which were incurred before the statute went into effect.  Pickle v. Finley, 91 Tex. 484, 44 S.W. 480 (1898).

## SUMMARY

The requirement of S.B. 118, Acts 52nd Leg., R.S. 1951, ch. 60, p. 94, that copies of contracts between State agencies and the Federal government be filed with the Secretary of State before Federal funds received under such contracts are encumbered or expended applies to all Federal funds in the State Treasury on and after September 7, 1951 (the effective date of S.B. 118), regardless of the date on which the contract was made or the funds were received.

Before issuing a warrant, the Comptroller of Public Accounts should ascertain that a copy of the contract has been filed with the Secretary of State in compliance with S.B. 118.

Yours very truly,

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

MKW:wb

PRICE DANIEL
Attorney General

By *Mary K. Wall*
  Mary K. Wall
    Assistant