

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 28, 1970

Hon. Bevington Reed
Commissioner
Coordinating Board, Texas College
  and University System
Sam Houston Building
Austin, Texas

Opinion No. M- 672

Re: Questions regarding laying
    out of service areas by the
    Coordinating Board and an-
    nexation of territory to a
    junior college district
    under the provisions of
    Acts 1969, 61st Legisla-
    ture, Chapter 788 (Chapter
    2815h-1b, V.C.S.)

Dear Mr. Reed:

Your letter requesting an opinion from this office concerning the above captioned matter presents this factual statement:

"On January 15, 1968, the Coordinating Board adopted a plan for development of the junior colleges in Texas. That plan, as published in Coordinating Board Policy Paper #2, The Development of Community Junior Colleges in Texas, says in part:

"'Having determined minimum student enrollment criteria, and recognizing that Texas has not only centers of heavy population concentration but also large areas with sparse population, the Coordinating Board recommends that for community junior college purposes, the State be divided into fifty-three geographic regions having certain student population characteristics.'

"' A geographic region does not represent a tax district; nor does it define an area in which students must attend a college located therein, to the exclusion of movement across "lines drawn."'

"The region does represent that area from which most of the community junior college students should and will come; and represents as well an area wherein at least one community junior college district

-3205-

is feasible during the forthcoming two decades.
It is important to understand that the boundaries
of each of the fifty-three proposed regions are
flexible and will be subject to change at such
time as change seems reasonable and practicable."

Based upon these facts, you ask the following questions:

"May this action of the Coordinating Board
be construed as laying out service areas for
assisting junior colleges as specified in Chapter
788 of the General and Special Laws passed by the
61st Legislature, Regular Session, 1969?

"If the action of the Coordinating Board is
not so construed, can a junior college district be
expanded under Chapter 788 of the General and Special
Laws as cited?"

A question has been raised at the outset as to whether
the Board intended its plan to be construed as laying out service
areas for assisting junior colleges.  It is our conclusion that
such a question cannot be considered.  The Legislature, as will
be herein later discussed, made its own interpretation of the
Board's action and enacted into law Article 2815h-1b, Vernon's
Civil Statutes, expressly recognizing the authority of the Board
to lay out service areas for assisting junior colleges.  Such
legislative interpretations or constructions in a later act of
an existing law are persuasive and entitled to great weight as
showing legislative intent in the passage of the act under con-
sideration.  53 Tex.Jur.2d 265-266, Statutes, Sec. 178.  Further-
more, for the purpose of ascertaining intent, it is the general
rule of law that a statute may not be impeached by parole evidence
or oral testimony of individual legislators, officers, or members
of the legislative body.  50 Am.Jur.2d 120, Statutes, Sec. 130.  Thus,
for example the testimony of a legislator as to the intent of an
enactment passed by the Legislature of which he was a member is
incompetent.  Barlow v. Jones, 37 Ariz. 396, 294 Pac. 1106 (1930).
It is our opinion that in any event the intention of the Board is
expressed in the wording of the instrument.

As the Texas Supreme Court stated in Webster, et al. v.
Texas & Pacific Motor Transport Co., et al., 140 Tex. 131, 166
S.W.2d 75 (1942):

". . . it was the intention of the Legislature
that the Railroad Commission. . . should be composed
of three members, and that the Commission, acting as

> such, and not the individual Commissioners,
> should have the authority to grant or refuse
> applications.   . . .
>
> "It is a well established rule in this State
> . . . that where the Legislature has committed a
> matter to a board . . . or other administrative
> agency, such board . . . must act thereon as a body
> at a stated meeting . . ."   (Emphasis added.)

Article 2919e-2, Vernon's Civil Statutes, creating the Coordinating Board, Texas College and University System, became effective September 1, 1965.  Section 1 states in part that the purpose of the act is to establish in the field of higher education in Texas an agency to provide leadership and coordinati on for the Texas higher education system to the end that the State may achieve excellence for a college education of its youth through efficient and effective utilization and concentration of all available re- sources and the elimination of costly duplications in program offerings, faculties and physical plants.

Such Article confers numerous and extensive powers on the Board (Sections 10, 18, 19 and 23.)  For example, the Board is given authority to define a junior college, develop and publish criteria to be used for a basis for determining the need for changing the classification of any public institution of higher education and for determining the need for new public colleges, and classify and prescribe the role and scope for each public institution and hear applications from the institution for changes in such classification, etc.  The Board is also given responsibility for adopting policies, enacting regulations and establishing general rules necessary for carrying out the duties with respect to public junior colleges placed upon it by the Legislature.

Nearly three years later on January 15, 1968, the Coordinatir Board adopted and published the plan above mentioned and related map.

Chapter 788, Senate Bill No. 739, page 2332, Acts of the 61st Legislature of Texas, Regular Session, 1969 (codified by Vernon as Article 2815h-1b), became effective about a year and a half later on September 1, 1969.  It permits inclusion of territory in the boundaries of a junior college district, for junior college purposes, if such territory is (1) contiguous to the district and (2) "has been laid out by the Coordinating Board . . . as a service area for assisting junior colleges."  Such Chapter provides the manner for determining the question of such boundary change, that is, by petition and election.  It further states that it is cumulative and wholly

sufficient authority for such inclusion of territory. The emergency requiring its immediate effect is ". . . the fact that additional and adequate authority is required for changing the boundaries of junior college districts, and the fact that such changes are urgently needed . . ."

We think that Articles 2919e-2 and 2815h-1b, considered in the light of Policy Paper #2, must be construed together, each enactment in reference to the other, and effect given to all the provisions of each act. See 53 Tex.Jur.2d, 280, Statutes, Sec. 186. Otherwise, the authority of the Coordinating Board to lay out service areas is questionable, and the Legislature in enacting the provision in Article 2815h-1b, "has been laid out by the Coordinating Board . . . as a service area," has done a useless or futile thing until that Article is amended or the Legislature specifically grants the Board such power. This is true, because Article 2919e-2 nowhere does so, and Article 2815h-1b cannot, because the power is neither expressed in the caption nor germane to the subject, except as an annexation requirement. See Constitution of Texas, Art. III, Sec. 35. Moreover, Policy Paper #2 would be rendered meaningless and violence would be done to any proceeding had under Article 2815h-1b.

However, Article 2919e-2 expressed its general intent, purposes and objectives, and the Coordinating Board thereafter adopted Policy Paper #2. While "It is true that laws speak prospectively 'unless the contrary is clearly indicated'" (Freeman v. Terrell, 115 Tex. 530, 284 S.W. 946 (1926), a subsequent Legislature enacted Article 2815h-1b and clearly employed the past tense in referring to territory which "has been laid out" as a service area; and also ". . . the rule is that a statute speaks as of the time at which it takes effect." Moorman v. Terrell, 109 Tex. 173, 202 S.W. 727 (1918). Since Policy Paper #2 and its map had been adopted and published before the Legislature enacted Article 2815h-1b, it may be presumed to have known the construction placed on Article 2919e-2 by the Coordinating Board in assuming the power to adopt and publish Policy Paper #2 and its map. As stated in Railroad Commission v. T & N. O. R. Co., 42 S.W. 2d 1091 (Tex. Civ. App., 1931, error ref.):

"Another general rule of statutory construction . . . is that the interpretation which has been placed on a statute by the officers or governmental department charged with carrying out . . . the terms of the law will be accorded due consideration by the courts in construing the law."

See also 53 Tex. Jur.2d, Statutes, pages 276, 277, Sec. 183 and pages 265, 266, Sec. 178.

Therefore, in our opinion, the action of the Coordinating Board in adopting Policy Paper #2 may be construed as laying out service areas to assist junior colleges, and junior college districts may be expanded under Article 2815h-1b. However, this opinion is not to be construed as restricting the amendment or rescission of Policy Paper #2 by the Coordinating Board.

## S U M M A R Y

The plan of the Coordinating Board, State College and University System, for development of the junior colleges in Texas may be construed as laying out service areas for assisting junior colleges as  provided for in Article 2815h-1b, V.C.S., and a junior college district is authorized to be expanded under the provisions of such statute.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Linward Shivers
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Glenn Brown
Ray McGregor
Rick Fisher
S. J. Aronson

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant