**CITY OF LUBBOCK and Lubbock Fire Department, Appellants,**

**v.**

**Harold ECKLES, James Dean, and James Vaughn, Appellees.**

No. 07–94–0020–CV.

Court of Appeals of Texas, Amarillo.

Dec. 8, 1994.

Rehearing Overruled Jan. 5, 1995.

Clark, West, Keller, Butler & Ellis LLP, Dallas, Allen Butler and Jerry D. Mason, Office of the City Atty., City of Lubbock, Lubbock, John C. Ross, Jr. and Jean E. Shotts, Jr., for appellants.

Jenkins & Deats P.C., Austin, B. Craig Deats, for appellees.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

The City of Lubbock and the Lubbock Fire Department, which are collectively referred to as the City, present an eleven-point attack against the trial court's judgment, rendered on a jury's verdict, ordering overtime compensation paid to Harold Eckles, James Dean and James Vaughn, who are collectively referred to as the firemen. The compensation was for back pay for overtime hours the firemen spent in continuous contact with the fire department by pager or telephone and were subject to call for immediate return to duty from 30 April 1984 to 1 September 1987, the period of time for which they sought compensation. Based upon the

rational expressed and the authorities cited below, we will affirm.

At all relevant times, Eckles was the Assistant Fire Marshal of, and Dean and Vaughn were Inspector/Investigators with, the Lubbock Fire Department, who claimed overtime pay from the City. Upon our first opportunity to review the dispute between the parties, we affirmed a take-nothing summary judgment against the firemen. *Eckles v. City of Lubbock,* 846 S.W.2d 863 (Tex.App.—Amarillo), *rev'd and remanded per curiam,* 846 S.W.2d 825 (Tex.1992). In so doing, we aligned our decision with other intermediate appellate courts' interpretation and application of the statute under which the firemen made their original claims, former article 1269p, section 6, of the Texas Revised Civil Statutes Annotated,[1] and held that merely being accessible by telephone, radio or pager did not constitute continuous contact with the fire department so as to be counted as hours worked. *Id.* 846 S.W.2d at 865–67. By its per curiam opinion, the Supreme Court, stating "the facts and legal issues in this case are controlled by our decision today in *Tijerina v. City of Tyler,* 846 S.W.2d 825 (Tex.1992)," reversed our, and the trial court's, judgment, and remanded the cause "to the trial court to decide in light of *Tijerina* whether the [firemen] were in 'continuous contact' and 'immediately available,' and, if so, the amount of their damages." *Eckles v. City of Lubbock,* 846 S.W.2d 825 (Tex.1992).

After remand, a trial on the merits was before a jury, during which conflicting evidence was presented on the primary issue of whether, in accordance with the court's instruction, the firemen were in continuous contact with the fire department and subject to immediate call to duty. The issue was

submitted to the jury by a question expressed in strict compliance with the Supreme Court's directive in *Eckles* in this language:

> Do you find from a preponderance of the evidence that the [firemen] were in continuous contact with the Fire Department and subject to immediate call to duty at any time during the period in issue?

And, "in the light of *Tijerina,*"[2] the court gave this instruction to the jury:

> In answering this question, you are instructed that "continuous contact" means the individual's duty required him to be within reach by radio pager or telephone at all times; and that "immediate call" means that it was the individual's duty when called to arrive in some reasonable amount of time, allowing for preparation and travel.

Eleven of the twelve jurors answered the question, finding that each of the firemen was in continuous contact with the fire department and subject to immediate call to duty during the period at issue. The jurors then determined that Eckles was entitled to $387,000, Dean was entitled to $319,000, and Vaughn was entitled to $259,000, from the City as compensation for that period of time.[3]

The City contends with its initial attacks on the judgment that there is (1) no, or (2) insufficient, evidence to support a finding that the firemen "were required to remain in continuous contact with the Fire Department and were subject to immediate call to duty." By its next two points, the City contends the trial court erred in (3) excluding the Fire Marshal's budgets, and (4) refusing its requested instruction concerning the authority of an officer to act for the City. With its

1. References to the statute are to the statute under which the claims were made, *i.e.,* the version of article 1269p, section 6, of the Texas Revised Civil Statutes Annotated as it existed during the relevant time period, which is explicated in detail in *Eckles v. City of Lubbock,* 846 S.W.2d at 864–66. The relevant provisions of the statute have now been codified at Texas Local Government Code Annotated section 142.001 (Vernon Supp.1994).

2. In considering the same question of compensation in *Tijerina,* the Supreme Court wrote:

> If his on call duty required him to be within reach by radio pager or telephone at all times, Tijerina was in "continuous contact"; and further, if his duty when called was to arrive in some reasonable amount of time, allowing for preparation and travel, he was subject to "immediate call."

*Tijerina v. City of Tyler,* 846 S.W.2d at 829.

3. In rendering judgment for the compensation determined by the jury, the court added prejudgment interest, resulting in awards of $608,550.50 to Eckles, $497,216.22 to Dean, and $412,986.29 to Vaughn.

eleventh-point attack, the City contends it was entitled to judgment as a matter of law because the requirement that the firemen remain available for immediate call to duty by being in continuous contact was an *ultra vires* act. The remaining points of error, five through ten, are utilized to attack the constitutionality of the statute and its application to the City. We will discuss the City's contentions of error in logical consecution, beginning with its first two points contesting the sufficiency of the evidence to support the jury's first finding.

At the threshold of our consideration of the City's evidential contentions, we observe that the City has recast the jury's initial finding. In phrasing its first two points, the City borrows from the court's jury instruction so as to fault the jury for finding the firemen "were *required* to remain in continuous contact with the Fire Department and were subject to immediate call to duty." The jury is faulted because, in the City's view, there is a complete absence of evidence that the firemen were ever *required* to remain, at all times, within reach by radio or telephone as contemplated by the statute. Even so, the City's contentions under its phrasing of the jury's finding will be resolved.

■ With regard to the City's no evidence contention, we begin with a review of the entire record to determine whether there is more than a scintilla of evidence to support the finding, *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and if so, the finding will be upheld. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). Evidence is merely a scintilla when it is so weak as to do nothing more than create a mere surmise or suspicion of a fact. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970). Then, we must consider only that evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993).

■ If there is evidence to support the finding, we next will consider the City's insufficient evidence contention. In resolving the contention, we must consider and weigh all the evidence and set aside the jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

■ Eckles's position of Assistant Fire Marshal encompassed the responsibilities of investigating fires, maintenance of work records, and preparation of budgets. In conjunction with his job, Eckles received a pager, a city-owned vehicle equipped with a radio, and instructions from Fire Marshal John Anthony that he was "required to be on call 24 hours a day, seven days a week, except when [he] was on leave."

Eckles testified he was instructed to use the city-owned vehicle at all times, even for personal errands, so he "could respond immediately from that point right there." When he was not in the radio-equipped vehicle, he was to have the pager with him at all times so he could be contacted by the fire department, and was required to stay within the range of radio frequency for the pager unless arrangements for leave were made with the Fire Marshal. When asked, "During the time that you spent in an on-call status, were you in continuous contact with the fire dispatch office by radio pager or telephone?" Eckles replied, "Yes, sir."

John Anthony, a Fire Marshal who retired in 1987, testified that when he became Assistant Fire Marshal, the on-call policy was in effect, and he understood from the Fire Marshal that he had a mandatory obligation to be on call. He stated that when he became Fire Marshal, he indicated to Eckles that on-call duty was mandatory for him.

Dean's testimony concerning the instructions given by Fire Marshal Anthony mirrored Eckles's testimony. Vaughn testified likewise, and stated that the instructions were not changed during the relevant time period.

It was evidenced that the rules and regulations of the Fire Department vested the responsibility for setting policy and managing the Fire Department in the Chief of the Department. The Chief testified that he in-

formed the members of the Fire Marshal's office that their use of city vehicles did not constitute them being on call, and that they were not required to wear their pagers after hours. However, Anthony and the firemen testified that they never received those instructions. The evidence also revealed that, at some point in time, a memorandum was issued regarding the voluntariness of on-call duty, and there was testimony that Anthony told Dean and Vaughn that their decision whether to carry a pager and respond was voluntary. Still, the firemen, through their testimony, described the on-call assignment as a military-type voluntary service, and Vaughn expressly stated that it never occurred to him not to participate. Although Eckles stated it was one of his responsibilities to, and when necessary or appropriate he did, assign someone else to respond to his calls, when asked if he had an option not to go when called, he answered, "No. We responded immediately."

Applying the standard of review for a no evidence contention to the body of evidence presented, there obviously is some evidence of probative force to support the jury's finding that, in light of the required duty instruction, the firemen were in continuous contact with the Fire Department and subject to immediate call to duty. Therefore, the finding must be upheld against the City's no evidence contention, *Stedman v. Georgetown S. & L. Ass'n,* 595 S.W.2d at 488, and its first point of error is overruled.

■ The entire body of evidence contains conflicting evidence whether the firemen's duty required them to remain in constant contact with the Fire Department and subject to immediate call to duty. It was the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses. *Ford v. Panhandle & Santa Fe Ry. Co.,* 151 Tex. 538, 252 S.W.2d 561, 563 (1952). Having done so, eleven of the jurors determined that the firemen's duty required them to remain in constant contact with the Fire Department and subject to immediate call to duty for such a period of time that

entitled them collectively, under the now repealed statute, to more than one and one-half million dollars.

Because we, like the Supreme Court, discern no wisdom in the Legislature's former requirement that cities pay firemen for on-call time, *see Tijerina v. City of Tyler,* 846 S.W.2d at 828, we are sensitive to the City's argument that an inference can be drawn from the record that the firemen individually made the decision whether to carry a pager and respond if called; and, by virtue of this individual decision, they claim overtime compensation, not for hours actually spent working but for the time spent going about their personal affairs and occupied by their private concerns. Nevertheless, the jury, as the fact finder, selected from the conflicting evidence and inferences that which it deemed the most reasonable in making its finding. Although the jury could have made a different finding from the evidence, it did not do so, and we are not permitted to set aside the jury's finding and substitute our finding merely because the jury could have drawn a different conclusion. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951).

Consequently, after reviewing the entire body of evidence, we cannot say that the jury's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. The City's second point of error is overruled.

■ By its fourth-point attack on the judgment, the City contends the trial court erred in its refusal of the requested instruction, submitted together with its rephrased question, in the following form:

Do you find from a preponderance of the evidence that the City of Lubbock required [the firemen] to remain available for immediate call to duty by continuously remaining in contact with a fire department office by telephone or radio?

In answering this question, you are instructed that the City of Lubbock's conduct includes the conduct of an officer or employee of the City who acts within the scope of his actual authority.

The authority of an officer or employee to act for the City of Lubbock must derive

from the Charter of the City of Lubbock or rules and regulations promulgated under the authority of that Charter.

In answering this question, you are instructed that "continuous contact" means the individual's duty required him to be within reach by radio pager or telephone at all times; and that "immediate call" means that it was the individual's duty when called to arrive in some reasonable amount of time, allowing for preparation and travel.

The City submits that by the refusal of the requested instruction, the court erred in two respects. First, the City asserts, contrary to its view of the jury finding upon which its first two points were based, that the refusal allowed the jury to disregard the issue of whether the City required the firemen to be on call. Second, the City says the refusal omitted, and denied the opportunity for the jury to pass on, its defense that any on-call requirement not promulgated by the Fire Chief was an *ultra vires* act not binding on the City. We are not so persuaded.

As earlier noticed, the court submitted the proper question for the jury to reach a decision on the issue outlined by the *Eckles* court and, following the mandate that the issue be decided "in the light of *Tijerina*," instructed the jury in the language of *Tijerina* as to the meaning of the terms used in the question. In doing so, the court directed the jury's attention to the on-call duty requirement for "continuous contact" and "immediate call." Thus, the court's submission adhered to the instructions given it by the *Eckles* court and, as such, will be enforced. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986).

■ Still, the City, at least conceding the court's instruction "did hint at the 'requirement' element of this cause of action," argues that the instruction totally omitted its defense and denied it the opportunity for the jury to rule on the question whether an individual, with actual authority to promulgate a policy which would bind the City, did in fact do so. However, the question whether the on-call policy was in fact promulgated by one with authority to bind the City was subsumed within the broader question submitted, *viz.*, whether the firemen's duty re-

quired them to be in continuous contact and subject to immediate call. The duty could embrace the requirement only if it was authoritatively promulgated.

Within the evidence adduced, some of which has been earlier summarized, there were conflicting versions whether the on-call policy was promulgated by one with authority to bind the City. Thus, the City's requested instruction was one which could be handled by advocacy and argument, rendering the instruction unnecessary for the jury to reach its verdict, Jack Pope and William G. Lowerre, *The State of the Special Verdict—1979*, 11 St. Mary's L.J. 1, 55 (1979), particularly since the court submitted the controlling issue and instruction as directed. Island Rec. Dev. v. Republic of Texas Sav., 710 S.W.2d 551, 555 (Tex.1986). The City's fourth point of error is overruled.

■ With its third point, the City complains that the trial court erred in excluding the budgets for the Fire Marshal's office during the relevant time period. It is the City's position that the budgets would show overtime pay was not authorized by the City and demonstrate that neither the City nor the Fire Chief were requested to, or did, authorize the type of overtime work by the firemen.

Instead of pausing to decide whether the court properly excluded the budgets for the given reason that the City failed to timely supplement its discovery responses, it suffices to state why the exclusion was not reversible error. The City elicited testimony from the former and present fire chiefs that the amount of overtime later claimed by the firemen was not identified as a need when the budget was discussed with Fire Marshal Anthony, and was not submitted with the budget for the Fire Marshal's office. Then, the budgets themselves were not controlling, but cumulative only. Under these circumstances, reversal will not occur because of the court's ruling, even if it was erroneous. *Whitener v. Traders and General Ins. Co.*, 155 Tex. 461, 289 S.W.2d 233, 236 (1956). The City's third point of error is overruled.

■ The City's eleventh-point contention is that it was entitled to judgment as a

matter of law. This results, the City proposes, because the uncontradicted evidence demonstrated conclusively that the only official authorized to promulgate policy for the Fire Department never required the firemen to remain available for immediate call to duty by continuously remaining in contact with the Fire Department office by telephone or radio. Hence, the City concludes, any unofficial policy to the contrary is an *ultra vires* act which does not subject the City to liability.

To prevail on its contention, the City, having assumed the burden to prove the *ultra vires* act, must clear two hurdles. First, the City must show that in the entire record there is no evidence the duty requirement found by the jury in answering the first question was authoritatively promulgated. If the City does not trip on this hurdle, then the City must show from the entire record that the duty requirement was not authoritatively promulgated. *Accord Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

To support its contention, the City relies upon the evidence that pursuant to its Charter, the Fire Chief promulgated the rules and regulations for the Fire Department. Under the rules and regulations, only the Fire Chief had authority to set policy for employees in the Fire Marshal's office, and he never promulgated a policy, or authorized the Fire Marshal to adopt any policy, which required the firemen to remain available for immediate call to duty by continuously remaining in contact with the Fire Department office by pager 24 hours a day, seven days a week.

However, in addition to hearing the evidence previously recounted in the address of the City's first two points of error, the jury also heard from the former fire chief that not all duties required of fire fighters are stated verbatim in the rules and regulations. Moreover, the rules and regulations state that the Fire Marshal supervises the employees in his office, and the fire prevention personnel shall work such hours as assigned by their supervisor, and perform "such other duties as required by the Fire Marshall." The present fire chief testified that the former fire chief admitted he had installed a "voluntary" on-call system in the Fire Marshal's office. Both fire chiefs agreed that the firemen are entitled to follow the directions of the Fire Marshal without checking with the Fire Chief to ensure that such directions are properly authorized.

All of this evidence bearing on the issue whether the on-call policy was authoritatively promulgated was before the jury. The conflicting nature of the evidence presented a fact issue for the jury's resolution and, there being probative evidence to support the jury's resolution contrary to the City's contention, its point must fail. *Holley v. Watts*, 629 S.W.2d 694, 697 (Tex.1982). The eleventh point of error is overruled.

The City utilizes its other points, five through ten, to contend that the statute, and the Supreme Court's interpretation of it, are unconstitutional for a variety of reasons. Although we properly have addressed the City's points concerning fact issues and its defense that arose after remand and retrial, we are precluded from entertaining its attacks on the constitutionality of the law which the *Eckles* court held, in 846 S.W.2d at 825, was to govern the retrial. *Hudson v. Wakefield*, 711 S.W.2d at 630–31. The City's points of error five through ten are overruled.

Accordingly, the judgment is affirmed.