# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

================================

## ON MOTION FOR REHEARING

================================

### NO. 03-07-00009-CV

**City of Round Rock and Round Rock Fire Chief Larry Hodge, Appellants**

**v.**

**Mark Whiteaker, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-06-003576, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## O P I N I O N

We withdraw our opinion, concurring opinion and judgment issued September 14, 2007, and substitute the following in its place. We overrule appellants' motion for rehearing.

This appeal is the latest in the rapidly-evolving jurisprudence addressing, in light of *City of Houston v. Williams*,[1] the extent to which governmental immunity bars suits arising from alleged violations of local government code chapter 143. Mark Whiteaker, a lieutenant in the Round Rock Fire Department, sued the City of Round Rock and its fire chief, Larry Hodge (collectively,

_____

[1] 216 S.W.3d 827 (Tex. 2007)

the City), claiming that his rights under local government code section 143.036 were violated when Hodge promoted another fire lieutenant to a captain position that Whiteaker desired. Whiteaker sought remedies that include retroactive promotion, back pay, and back benefits. The City filed a plea to the jurisdiction, asserting that Whiteaker lacked standing, that he failed to exhaust administrative remedies, and that his claims were barred by the City's governmental immunity. The district court denied the plea, and the City appeals from this order.[2]

*Williams* and other recent Texas Supreme Court decisions regarding sovereign or governmental immunity require us to conclude that Whiteaker's claims are barred by governmental immunity to the extent they seek back pay or other retrospective monetary relief, but not to the extent they seek to compel the City to comply with chapter 143 prospectively. The record before us indicates that Whiteaker may be able to cure this partial jurisdictional defect by amending his pleadings. For these reasons, and because we overrule the City's other issues, we affirm the order of the district court in its entirety.

## STANDARD AND SCOPE OF REVIEW

The subject-matter jurisdiction of a trial court may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Hendee v. Dewhurst*, 228 S.W.3d 354, 366 (Tex. App.—Austin 2007, pet. denied). The determination of whether a trial court has subject-matter jurisdiction begins with the pleadings. *See Miranda*, 133 S.W.3d at 226.

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2006).

The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the pleader has met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.*

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

However, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland*, 34 S.W.3d at 555. When a plea to the jurisdiction challenges the existence of facts alleged by the pleader to establish the trial court's subject-matter jurisdiction, the trial court must consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555); *Hendee*, 228 S.W.3d at 366. To varying degrees, this jurisdictional inquiry may also implicate the merits of the pleader's cause of action. *Compare Bland*, 34 S.W.3d at 554-55 (citing challenges to associational standing and personal jurisdiction as entailing "an evidentiary inquiry [that] . . . does not involve a significant inquiry into the substance of the claims" and holding that challenge to taxpayer standing did not implicate merits), *with Miranda*, 133 S.W.3d at 227-28 (describing overlapping jurisdictional and merits inquiry regarding challenge to whether

3

parks and wildlife department acted with gross negligence so as to waive sovereign immunity under the recreational use statute). When the consideration of a trial court's subject-matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in determining whether the jurisdictional determination should be made at a preliminary hearing or await fuller development of the case, mindful that the jurisdictional determination must be made as soon as practicable. *Miranda*, 133 S.W.3d at 227-28.

"[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Id*. at 227. This standard, which "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)," seeks to reconcile "the fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided" while "protect[ing] the interests of the state and the . . . claimants in cases . . . in which the determination of the subject matter jurisdiction of the court implicates the merits of the parties' cause of action." *Id*. at 228. Accordingly, when reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant and indulge every inference and resolve any doubt in the nonmovant's favor. *Id*. Whether the evidence presents a fact question regarding a jurisdictional fact is a question of law that we review de novo. *Id*.

# CHAPTER 143

Before turning to the parties' pleadings and jurisdictional evidence, it is helpful to first survey the statutory context in which this proceeding arises—chapter 143 of the local government code.[3]

Chapter 143 of the local government code is the current incarnation of the Firefighter and Police Civil Service Act. Chapter 143 is intended "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." Tex. Loc. Gov't Code Ann. § 143.001(a) (West 1999). To that end, positions in the fire and police departments of municipalities governed by chapter 143 are classified, receive civil service protection, and are filled from promotion eligibility lists based on objective, merit-based qualifications and competitive testing. *Id.* § 143.021 (West 1999).

Municipalities are not automatically governed by chapter 143. Instead, the legislature has permitted municipalities with a population of 10,000 or more that have a paid fire department and police department to opt-into the chapter 143 regime through a local election. *Id.* § 143.002 (West Supp. 2006), § 143.004 (West 1999). The voters of Round Rock have approved the adoption of chapter 143 and, at all times relevant to this case, it has governed the City's fire and police departments. The City has established a Firefighters' and Police Officers' Civil Service Commission

---

[3] The following discussion references requirements in chapter 143 applicable to municipalities, like the City, with a population of less than 1.5 million. Somewhat differing requirements apply to municipalities with larger populations.

(the Commission) to administer and implement chapter 143 in accordance with its purposes. *See id.* § 143.001, § 143.006 (West Supp. 2006).

In a municipality like the City that is governed by chapter 143, the municipal governing body establishes by ordinance the classifications and number of positions in each classification. *Id.* § 143.021(a). In this manner, the governing body can create new positions or, within certain limitations, abolish them. *See City of San Antonio v. Wallace*, 338 S.W.2d 153, 155-59 (Tex. 1960); *Michna v. City of Houston*, 521 S.W.2d 331, 334-35 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ).

Promotion eligibility lists for vacancies in each non-entry level classification are created by administering a competitive written exam open to promotion-eligible candidates. *See* Tex. Loc. Gov't Code Ann. §§ 143.028, .032 (West Supp. 2006), § 143.030 (West 1999). Candidates who score 70 points or above (the maximum being 100 points) pass the exam. *See id.* § 143.033(c) (West Supp. 2006). Based on the candidates' exam scores and additional points awarded based on seniority, passing candidates are ranked on a promotion eligibility list. *Id.* § 143.033(b)-(c). Each promotion eligibility list remains in effect for one year after the date on which the exam was given, "unless exhausted" earlier. *Id.* § 143.036(h) (West Supp. 2006). As vacancies arise, the commission shall submit names from the list to the department head until each vacancy is filled or the list is exhausted. *Id.* § 143.036(c).

If a vacancy arises before a promotion eligibility list expires or is exhausted, the department head is required to fill the vacancy by permanent appointment from the list within sixty days after the date the vacancy occurs. *Id.* § 143.036(e). Texas courts have repeatedly held that a

6

department head's duty to fill a vacancy from a promotion eligibility list is mandatory—he or she has no discretion not to fill the vacancy. *See International Ass'n of Firefighters v. Townsend*, 622 S.W.2d 562, 563 (Tex. 1981) (per curiam); *Duckett v. City of Houston*, 495 S.W.2d 883, 886-87 (Tex. 1973); *see Klinger v. City of San Angelo*, 902 S.W.2d 669, 673-74 (Tex. App.—Austin 1995, writ denied). If no promotion eligibility list exists at the time the vacancy arises, the department head must fill the vacancy by permanent appointment from a promotion eligibility list that the commission shall create by conducting a new promotional exam. *Id.*

The top-ranked candidate on a promotion eligibility list at the time a vacancy occurs has the "primary right" to be appointed to fill the vacancy not later than the last day of the sixty-day statutory period in which the department head is required to fill the vacancy, and failure to timely fill the vacancy results in the top-ranked candidate's entitlement to the appointment, as a matter of law, effective on the sixtieth day. *Lee v. Downey*, 842 S.W.2d 646, 649 (Tex. 1992) ("A promotion is considered effective as of the last day that the city could lawfully have filled the vacancy; that is, sixty days from the date the vacancy was created."); *Duckett*, 495 S.W.2d at 887; *Klinger*, 902 S.W.2d at 673-74; *see also Michna*, 521 S.W.2d at 334-35 (holding that top candidates on promotion list existing when vacancies arose were entitled to promotions and pay beginning 90 days after the vacancies arose until the positions were validly abolished by ordinance).[4]

---

[4] Earlier versions of the civil service act mandated a 90-day period within which to fill vacancies rather than the current 60-day period. *Compare* Act of July 5, 1949, 51st Leg., R.S., ch. 572, § 2, sec. 8, 1949 Tex. Gen. Laws 1114, 1115 (90-day period) *with* Act of May 28, 1979, 66th Leg., R.S., ch. 753, § 3, sec. 8, 1979 Tex. Gen. Laws 1856, 1857 (60-day period). Hence, pre-1979 cases refer to the former 90-day requirement. *See Duckett v. City of Houston*, 495 S.W.2d 883, 887 (Tex. 1973); *Michna v. City of Houston*, 521 S.W.2d 331, 335 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ).

Assuming the department head acts timely, however, he or she possesses some discretion to appoint a candidate from the promotion eligibility list other than the top-ranked candidate. When a vacancy arises, the top three ranking candidates on the promotion eligibility list (or, if there are less than three candidates on the list, those candidates) are submitted to the department head, who is required to appoint the highest-ranking candidate unless he or she "has a valid reason for not appointing the person." Tex. Loc. Gov't Code Ann. § 143.036(f). If the department head elects not to appoint ("bypass") a top-ranked candidate, the department head is required to "personally discuss the reason with the person being bypassed before appointing another person" and file the reason in writing with the commission. *Id.* The bypassed candidate has the right to seek review with the commission regarding the reason for the bypass. *Id.* If the candidate does not apply for review or the commission does not set aside the bypass, the candidate's name is returned to its place on the eligibility list and shall be resubmitted to the department head if a vacancy occurs. *Id.* § 143.036(g). However, if a department head bypasses a candidate three times, files the reason for each bypass in writing, and the commission does not set aside any bypass, the person's name shall be removed from the promotion eligibility list. *Id.*

**PLEADINGS AND JURISDICTIONAL EVIDENCE**

The City challenged the sufficiency of Whiteaker's pleadings and submitted evidence in an attempt to controvert some of Whiteaker's pled jurisdictional facts. Some of these challenges, as explained below, implicate the merits of Whiteaker's claims. Whiteaker responded with his own jurisdictional evidence. Accordingly, we begin our jurisdictional analysis by reviewing both Whiteaker's pleadings and the parties' jurisdictional evidence to identify (1) facts alleged in

8

Whiteaker's pleadings that are unchallenged; (2) any jurisdictional facts that the City has challenged and conclusively negated; and (3) any jurisdictional facts that the City has challenged but about which a fact issue remains. *See Miranda*, 133 S.W.3d at 226. Unless the City has challenged and conclusively negated a jurisdictional fact pled by Whiteaker, we must assume the fact to be true for purposes of our jurisdictional analysis. *Id.* The following summary reflects this analytical framework, and we emphasize that we are expressing no opinion regarding the ultimate merits of any of the parties' factual contentions.

In July 2005, the Round Rock City Council enacted an ordinance creating new positions in several fire department classifications, including a total of eleven new captain positions. *See* Tex. Loc. Gov't Code Ann. § 143.021.[5] The ordinance also prescribed the division to which each captain position would be assigned: eight of the new captain positions were to be in suppression, one in fire prevention, and two in training.

Because no promotion eligibility list for captain positions existed at the time the new captain vacancies arose, the Commission was required to administer a promotional exam for eligible fire lieutenants and create a new list. *See id.* §§ 143.028, .030, .032, .033. On October 5 or 6, 2005, the Commission administered the required exam and created a promotion eligibility list of twelve candidates. Lieutenant Whiteaker ranked eleventh on the list.

---

[5] The City's fire department civil service classifications include, in ascending rank order, Fire Fighter, Lieutenant, Captain, Battalion Chief, Deputy Chief, and Fire Chief.

Chief Hodge initially extended written offers of captain promotions, effective October 22, to each of the top eleven candidates on the promotion eligibility list.[6] Whiteaker signed the document, verifying that "I accept the promotion to the rank of fire Captain pursuant to the conditions described herein,"and returned it. On October 27, however, Hodge emailed the top eleven captain candidates "to notify you that the letters you signed accepting a promotion to the rank of captain effective [October] 22, 2005, are null and void since no promotions were made . . . due to concerns for assignment to a 40 hour work week." While some fire department assignments had a shift-based schedule (e.g., 24 hours on, 48 hours off), other assignments—including the two captain positions assigned to the training division—required a Monday-through-Friday, 40-hour work week. This and other portions of the record indicate that many firefighters prefer a shift-based schedule for various reasons. In his email, Hodge stated that he would contact each candidate in rank order of eligibility over the following week "to explain what positions are open and your options regarding the positions to be filled so this process can be completed."

After contacting the ten higher-ranking candidates in rank order and offering them their choice from among the captain positions remaining available, Hodge had remaining to offer Whiteaker only one of the two captain positions assigned to training (which, again, required a 40-hour work week). According to Whiteaker, who testified by affidavit, he explained to Hodge that

_____

[6] On October 12, Chief Hodge sent a memorandum to each of the top eleven captain candidates on the promotion eligibility list, including Whiteaker, titled "Conditional Offer of Promotion." In this document, Hodge stated that, "I am pleased to offer you a promotion to the rank of Captain . . . effective at 0700 am on October 22, 2005." Hodge further stated that, "With your acceptance of this offer of promotion, you agree to accept [any] and all assignments for Captain in the Round Rock Fire Department as assigned by the Fire Chief for the duration of such assignments as determined by the Fire Chief."

10

he could not accept this particular captain promotion for "personal reasons" related to its work schedule—"I lived in Temple, and because of my wife's work schedule, had certain childcare obligations that could not be accommodated by a Monday through Friday, 40-hour work schedule." At the time, Whiteaker had been working a 24-hours on, 48-hours off shift schedule in suppression. Hodge, Whiteaker testified, responded "that if I declined the promotion I would be removed from the promotion eligibility list and would not have the opportunity to promote to Captain unless I took another promotional examination and was placed on a future promotional eligibility list." "When I protested," Whiteaker added, Hodge "explained that he felt the Civil Service Act required my removal from the list if I voluntarily declined an offer of promotion." "After consulting with [his] representatives in the Round Rock Firefighter's Association," Whiteaker "told Chief Hodge that [he] did not agree that [Hodge's] was a correct interpretation of the Civil Service Act."

On November 15, Whiteaker—who states that he was "directed" to do so by Chief Hodge—countersigned a memorandum from Hodge acknowledging that Hodge had offered him a promotion to Captain, that he had "declined the offer . . . and requested to remain on the eligibility list," but that Hodge was instead required to remove him from the list. The document concluded with, "My signature is verification that I have received and understand the information contained within this document, although I may not agree with it[s] actions pursuant to the conditions described herein." Hodge then filled the eleventh new captain position by promoting the twelfth-ranking candidate on the promotion eligibility list. After some negotiations involving Hodge, other

11

City officials, Whiteaker, and representatives of the Round Rock Firefighters Association,[7] Hodge, as the City acknowledged in its plea to the jurisdiction, "did not remove [Whiteaker's] name from the list at that time."

On January 14, 2006, one of the captains assigned to the training division, Billy Wusterhausen, was promoted to battalion chief, thus creating another captain vacancy in that division. Whiteaker pled and also testified that, beginning at some unspecified time, this vacancy was filled by a captain previously assigned to suppression, Johnnie Bohac, creating a captain vacancy in suppression. According to Whiteaker, "Mr. Bohac continues to work in that position, and is listed in the RRFD website as a Captain in the Training Division." Whiteaker's pleading and evidence concerning this possible captain vacancy in suppression proves to be significant to our ultimate disposition of this appeal.

---

[7] Whiteaker pled and produced jurisdictional evidence concerning a December 2005 meeting involving him, the president of the Round Rock Firefighters Association, the Association's attorney (also his attorney in this proceeding), Chief Hodge, and the city attorney. Whiteaker and the Association had requested the meeting "concerning my status as a candidate for promotion to the rank of Captain." During this meeting, Hodge stated his concern that he would be unable to fill the captain position in training if firefighters on the promotion eligibility list could voluntarily decline promotion to that position. The Association responded by offering to conduct a survey of lieutenants to determine if any would be willing to accept positions in training. According to Whiteaker, "The meeting ended without any resolution as to whether or not I remained on the promotion eligibility list."

Following the meeting, the Association conducted the survey and, on December 31, its attorney emailed the city attorney stating that two lieutenants were willing to accept positions in training. Around the same time, in response to an inquiry from Chief Hodge, the Association's president restated its position that Whiteaker's decision to decline to be promoted to the captain position in training did not require his removal from the promotional eligibility list.

12

Whiteaker testified that, on January 25, while he was on duty, Deputy Fire Chief David Smith presented him with a memorandum from Chief Hodge, dated the same day. The memorandum stated that "you are promoted to captain effective 8:00 a.m. Saturday, January 28, 2006, to fill the captain's vacancy in Training created by [the] promotion to battalion chief. Your first day in Training will be Monday, January 30, 2006." The memorandum further ordered Whiteaker to report to the captain in the training division for further instruction not later than 8:00 a.m., Monday, January 30, 2006. Whiteaker testified that "I explained to Chief Smith that I was unable to accept this promotion for the same reason that I had explained to Chief Hodge back in November." Smith departed and relayed Whiteaker's response to Chief Hodge. Later that day, Smith telephoned Whiteaker and "told me that Chief Hodge had instructed him to say that I had been promoted, and if I wanted to avoid being promoted, I had to write a letter according to Civil Service. [Smith] said he would email me the language that needed to be included." Smith subsequently sent an email to Whiteaker stating that "I talked to Chief and the following must be included for civil service: I request a voluntary demotion from the rank of Fire Captain to the rank of Fire Lieutenant within the Round Rock Fire Department." Whiteaker "called Deputy Chief Smith back to protest having to write such a letter," to which Smith responded that Hodge "had said that if I didn't write a letter, I had to show up at Training Monday morning at 8:00 a.m., and that if I didn't, I would be considered absent without leave and disciplinary action would be taken."

Whiteaker consulted with Firefighters Association leadership and counsel. Counsel drafted an email to the city attorney protesting Chief Hodge's actions and emphasizing that "any letter written as required by the Chief will not be understood by us to preclude Whitaker's right to

13

pursue this matter further through appropriate legal action." Whiteaker testified that he drafted two letters, one requesting a voluntary demotion and the second advising of his view that it was illegal to remove him from the promotional eligibility list because he had declined promotion to the training captain position. However, the record does not contain these letters, nor indicate what happened to them. Whiteaker subsequently met with Chief Hodge and Deputy Chief Smith. According to Whiteaker, Hodge:

> explained that he was requiring me to write the letter requesting a voluntary demotion because the City Attorney had advised him that the Civil Service Act would not allow the City to create another promotional eligibility list to fill the position in Training until this list was exhausted. He therefore instructed me to write a letter requesting demotion and advised me of what the letter should say.

Whiteaker "then went to another room and drafted the letter as instructed," showed his draft to Chief Hodge, "who reviewed it, and then directed that I make further changes before he would accept it." Once Hodge approved the letter, Whiteaker signed it. A copy is included in the City's jurisdictional evidence:

> Chief Hodge I would like to thank you for the opportunity you have offered me to promote to the rank of Captain in training. At this time I regret I will have to ask to be demoted from the rank of Captain back to the rank of Lieutenant and to be able to remain at my current location at station # 2 on "C" shift. I have a four year old daughter that is going to a private school and my wife is a school teacher and their schedules conflict regularly. This means I have the duty of taking my daughter to school and picking her up. . . . At this time in my life working shift work benefits my family life the most. I have met with you and I understand that in no way will this be held against me on the next Captains promotions and I appreciate your understanding. I plan on immediately starting back into my studying for the next promotional exam and plan on improving on my next score and hopefully things will work out [] and [I] can be able to promote to the rank of Captain in the near future.

14

Whiteaker testified that "I did as instructed. . . . The letter does not truly represent my position, and I told Chief Hodge as much. I signed the letter to avoid threatened discipline."

In a memorandum dated the following day, Chief Hodge formally accepted Whiteaker's letter, purported to demote him from Captain to Lieutenant, "effective at 0701 hours January 28, 2006," and assigned him to the same shift and station he had previously been working. As noted above, Hodge's January 25 memorandum had stated that Whiteaker's promotion to captain was "effective 8:00 am Saturday, January 28, 2006." Read literally, Hodge's acceptance would have made Whiteaker's demotion *from* Captain effective before his promotion *to* Captain took effect. The parties have not addressed the significance, if any, of this discrepancy.

Hodge testified that, in early February, "I declared the October 6 eligibility list exhausted because there were no other Lieutenant candidates on the eligibility list who I could promote to the Captain in Training vacancy." The Commission thereafter posted notice of a promotional examination for Captain for April 4, 2006. *See* Tex. Loc. Gov't Code Ann. § 143.036(a), (d). Whiteaker's counsel, on behalf of Whiteaker and the Association, wrote the city attorney on February 6 disputing the Fire Department's position that the October 2005 eligibility list had been exhausted and that Whiteaker, formerly the top (sole) candidate on that list, no longer had a right of promotion to the next captain slot. He maintained that "having declined to accept the position in Training does not deprive Lt. Whiteaker of his place on the promotional eligibility list. The Fire Chief simply has bypassed Lt. Whiteaker for a position he cannot, for personal reasons, accept." For these reasons, Whiteaker's name should "be the first provided by the Commission for

15

the next Captain vacancy." The letter concluded with the warning that Whiteaker and the Association reserved all options, including legal action.

The Commission proceeded to conduct a captain promotional exam on April 4 and generated a new promotion eligibility list of five candidates. Whiteaker did not take this exam and he was not included on the new eligibility list. The new list was used to fill a new captain vacancy in suppression that had arisen on February 28, another one arising in mid-April, and two new captain positions that were created by the City Council in May. None of these positions were offered to Whiteaker, consistent with the City's position that he had not qualified as a candidate on the new, applicable promotion eligibility list.

It is undisputed that Whiteaker did not file any formal proceeding or appeal with the Commission. Instead, he filed suit in district court in September 2006. Whiteaker's central theory is that none of his actions, nor those of Chief Hodge or other City personnel, removed him from the October 2005 promotion eligibility list or exhausted the list; that he remained as the sole candidate when the February 28 captain vacancy in suppression arose; and that he accordingly had a primary right to be appointed to the vacancy within sixty days after it arose. *See* Tex. Loc. Gov't Code Ann. § 143.036(e); *Lee*, 842 S.W.2d at 649; *Duckett*, 495 S.W.2d at 887; *Klinger*, 902 S.W.2d at 674. Because Hodge failed to so appoint him, Whiteaker contends, he was entitled to the promotion, as a matter of law, on the last day of the sixty-day period, April 29, 2006. *See Lee*, 842 S.W.2d at 649; *Duckett*, 495 S.W.2d at 887; *Klinger*, 902 S.W.2d at 674.

16

Based on this theory, Whiteaker asserts three causes of action:

- a declaration under the Uniform Declaratory Judgments Act "of his right to promotion under § 143.036 retroactive to April 29, 2006 . . . and to pay for that position at all times thereafter."
- injunctive relief "enjoining Defendants from violating Plaintiff's rights under § 143.036 by unlawfully removing him from the October 6, 2005 Captain's promotional eligibility list, failing to promote him from that list to Captain on April 29, 2006, and from failing to provide him with the pay and benefits of the Captain rank after April 29, 2006."
- mandamus to compel Hodge to perform his "non-discretionary duty" to promote Whiteaker to captain retroactive to April 29, 2006.

Whiteaker prayed for the following relief:

- A declaration that "Defendants' failure to promote Plaintiff to the position of Fire Captain on or about April 29, 2006 violated Defendants' obligations and Plaintiff's rights under Texas Local Government Code § 143.036."
- A permanent injunction against the Defendants enjoining them "from violating § 143.036 by failing and refusing to promote plaintiff to the rank of Captain on April 29, 2006."
- "Order the Defendants to promote Plaintiff to Captain . . . retroactive to April 29, 2006 and to make Plaintiff whole for all pay and benefits lost as a result of Defendants' unlawful failure to promote Plaintiff on April 29, 2006."
- A writ of mandamus "directing Defendants to comply immediately with . . . § 143.036 by promoting Plaintiff to the rank of Captain effective April 29, 2006, and to pay him the salary prescribed for that position at all times thereafter."
- Prejudgment interest "on all backpay owed to Plaintiff."
- Attorney's fees and costs under the UDJA.
- Post-judgment interest.
- Such further relief, legal or equitable, as the court deems necessary and just.

## ANALYSIS

In four issues, the City asserts that the district court erred in denying its plea to the jurisdiction because (1) Whiteaker lacks standing; (2) Whiteaker's claims are barred by governmental immunity; (3) chapter 143 does not waive such immunity; and, alternatively, (4) Whiteaker failed to exhaust administrative remedies.

17

**Standing**

The City asserts that Whiteaker has no justiciable interest in his suit—and, therefore, lacks standing—because he had no right or interest in promotion to the February 2006 captain vacancy in suppression. Standing is a doctrine of justiciability, a threshold question that implicates subject-matter jurisdiction and emphasizes the necessity of a concrete injury for a justiciable claim to be presented. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (citing *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998)). The standing requirement stems from two limitations on subject-matter jurisdiction: the separation of powers doctrine and, in Texas, the open courts provision. *Id.* The general test for standing in Texas requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Texas Ass'n of Bus.*, 852 S.W.2d at 446 (citing *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)).

If, as Whiteaker asserts, he was the sole remaining candidate on the October 2005 promotion eligibility list and that list remained in effect when the February 2006 captain vacancy arose, he had a "primary right" under local government code section 143.036 to be promoted to the vacancy. *Lee*, 842 S.W.2d at 649; *Duckett*, 495 S.W.2d at 887; *Klinger*, 902 S.W.2d at 674. Whiteaker has alleged facts demonstrating a real controversy regarding the existence of such a right and concrete injury from its deprivation, and he seeks a declaration of this right and remedy for its deprivation. Whiteaker clearly has standing to assert his claims.

The crux of the City's standing challenge is that Whiteaker had not, in fact, remained as the top candidate on the October 2005 promotion eligibility list at the time of the February 2006

18

captain vacancy because that list had been exhausted by Whiteaker's promotion in January and was not continued or revived after Whiteaker's voluntary demotion. The City adds that Whiteaker did not take the exam to qualify for the April 2006 promotional eligibility list and can claim no interest in being promoted from the list. Similarly, the City argues that Whiteaker waived any interest he possessed in a promotion while on the October 2005 list, emphasizing his January 26 memorandum acknowledging exhaustion of the list and advising Chief Hodge that he would "immediately start back into studying for [his] next promotional exam and plan on improving [his] next score."

The City's standing challenge turns on disputed fact issues that overlap with the merits of Whiteaker's claims. These fact issues include the voluntariness of Whiteaker's "promotion" and "demotion" and related correspondence. As noted above, Whiteaker produced jurisdictional evidence that Chief Hodge threatened disciplinary action if he did not either report for duty as a captain in training or request a demotion and that Hodge dictated the content of the January 26 memorandum. We also observe that the record is unclear whether Whiteaker's January 26 promotion took effect before he was demoted.[8] The presence of fact issues forecloses dismissal under *Miranda*. *Miranda*, 133 S.W.3d at 227-28. Further, these fact issues are intertwined with several potentially controlling legal issues, including (1) whether Hodge and the City had the right to unilaterally promote Whiteaker to a captain position against his wishes; (2) conversely, whether Whiteaker had a right under chapter 143 to continue to decline promotions until a captain position with a desirable scheduling assignment became vacant; (3) whether the disposition of these

---

[8] As noted, Hodge's January 25 memorandum stated that Whiteaker was promoted to Captain "effective 8:00 am Saturday, January 28, 2006." Hodge's subsequent demotion of Whiteaker was made "effective at 0701 hours January 28, 2006."

19

legal issues is affected by the fact that no other candidates besides Whiteaker remained on the October 2005 promotional eligibility list; and (4) whether Hodge's actions in purporting to promote Whiteaker had the effect of removing him from the October 2005 list, divesting him of his rights as the top candidate on the list, and/or exhausting the list. The parties have not yet joined issue on or developed these legal issues. Where the parties have not yet joined issue or developed the legal issues that potentially control Whiteaker's standing, the district court did not err or abuse its discretion in denying the City's plea to the jurisdiction as to that ground. *See Hendee*, 228 S.W.3d at 382; *Davis v. Burnam*, 137 S.W.3d 325, 335 & n.16 (Tex. App.—Austin 2004, no pet.).

The City also suggests that Whiteaker's standing turns on whether he possessed a "vested property interest" in promotion to the February 2006 captain vacancy. The City's attempt to link standing to the existence of a vested property interest in promotion appears to be derived from a misreading of *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790 (Tex. 1951), to the effect that "absent a property interest in a civil service position, the courts have no jurisdiction to hear the claim." *Hancock* instead stands for the principle that there is no inherent judicial jurisdiction to entertain an appeal from a civil service commission except where the agency action violates a constitutional provision (such as due process, which presupposes the existence of a property interest). *Hancock* does not mean that a person whose statutory rights are being violated could have no judicial recourse of any kind, or standing to seek it, unless the statutory right implicates vested property rights.

In any event, even under the City's view of standing, the controlling question would still be whether Whiteaker had remained on the October 2005 promotion eligibility list at the time the February 2006 captain vacancy arose. The City states that, "[i]t has been long established that

20

an individual *on* a promotional eligibility list has a vested interest in a promotion once a vacancy occurs," and it characterizes the primary statutory right of the top candidate on a promotion eligibility list as a vested property right or interest in promotion. But the City's contention that Whiteaker had been promoted and no longer remained on the October 2005 promotion eligibility list, as previously explained, is not a proper ground for dismissal at this juncture.

The City's suggestion that one's placement on a promotion eligibility list confers a vested property right in a promotion is potentially more significant in its implications for governmental immunity. The City states that "a limited waiver of immunity is allowed under [chapter 143] for claims involving *vested rights*" and *Hancock* would indeed suggest that the district court would have inherent jurisdiction to entertain a challenge to City actions alleged to violate such rights. But as Whiteaker observes, a person's position as the top candidate on a promotional eligibility list, while conferring a statutory primary right to promotion, does not create an equitable property interest in promotion. *See Firemen's & Policemen's Civil Serv. Comm'n of City of Fort Worth v. Williams*, 531 S.W.2d 327, 330 (Tex. 1975); *Firemen's & Policemen's Civil Serv. Comm'n of City of Fort Worth v. Kennedy*, 514 S.W.2d 237, 239-40 (Tex. 1974); *see also Hancock*, 239 S.W.2d at 791-92 (fire captain had no vested property interest in position under civil service act that could give rise to inherent right to appeal from demotion); *but see City of Fort Worth v. Nyborg*, 999 S.W.2d 451, 457 (Tex. App.—Fort Worth 1999, pet. denied) (describing interest of top candidate as "an equitable property right in th[e] vacated position and a primary right to promotion"). In sum, we reject both the City's argument that Whiteaker lacks standing to pursue his claims and its premises that Whiteaker's standing depends upon the existence of a vested property interest in

a promotion and that a person's position as the top candidate on a promotion eligibility list confers such an interest. We overrule the City's standing issue.

**Governmental immunity**

The City asserts that Whiteaker's claims implicate its governmental immunity, that chapter 143 does not waive such immunity, and that the district court accordingly lacks subject-matter jurisdiction over Whiteaker's suit. Specifically, it contends that Whiteaker's claims for an order "mak[ing] Plaintiff whole for all pay and benefits lost as a result of Defendants' unlawful failure to promote Plaintiff on April 29, 2006" and a writ of mandamus compelling the City to pay back salary from that date seek "money damages" and, therefore, implicate its governmental immunity.[9] Whiteaker responds that his claims seek declaratory, injunctive, and mandamus relief to compel the City to comply with chapter 143 and do not implicate the City's governmental immunity. Alternatively, Whiteaker contends that chapter 143 waives the City's governmental immunity from his claims.

*General principles*

When performing governmental functions, political subdivisions of the state, including municipalities like the City, enjoy governmental immunity. *See City of Galveston v. State*, 217 S.W.3d 466, 467-68 (Tex. 2007). Governmental immunity derives from, or is an aspect of, the

---

[9] The City does not appear to dispute that the UDJA would waive its governmental immunity on Whiteaker's attorney's fees claim under its declaratory-judgment action, *see Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 445-46 (Tex. 1994), but disputes whether the district court has subject-matter jurisdiction over this cause of action.

state's sovereign immunity. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity protects municipalities against lawsuits for "money damages." *See City of Galveston*, 217 S.W.3d at 468 ("We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity."); *Reata Constr. Corp.*, 197 S.W.3d at 374 (quoting *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) ("Sovereign immunity protects the State from lawsuits for money damages.")). Sovereign or governmental immunity encompasses two principles: immunity from being sued and immunity from liability. *IT-Davy*, 74 S.W.3d at 853. When clothed with governmental immunity, municipalities enjoy immunity from suit unless expressly waived by the legislature. *City of Galveston*, 217 S.W.3d at 469; *Reata Constr. Corp.*, 197 S.W.3d at 374. Immunity from suit deprives a trial court of subject-matter jurisdiction. *Reata Constr. Corp.*, 197 S.W.3d at 374 (citing *Miranda*, 133 S.W.3d at 224).

Sovereign and governmental immunity are judge-made, common-law doctrines that are deeply rooted in Texas jurisprudence and its antecedents. *Reata Constr. Corp.*, 197 S.W.3d at 374-75; *Tooke v. City of Mexia*, 197 S.W.3d 325, 331-32 (Tex. 2006); *Hosner v. De Young*, 1 Tex. 764, 769 (1846). The contemporary rationale or justification for these doctrines is to protect state or local government resources from the costs of paying judgments and defending against them. *Reata Constr. Corp.*, 197 S.W.3d at 375 ("A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes."); *Tooke*, 197 S.W.3d at 331-32 (sovereign immunity

23

"remains firmly established, and as it has come to be applied to the various governmental entities in this State, an important purpose is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments"). Relatedly, the judiciary has deferred to the legislature to decide when, if, or to what extent to waive immunity, as these decisions entail sensitive policy judgments concerning the use of public resources and governmental functions that are the proper domain of the legislative rather than judicial branch. *City of Galveston*, 217 S.W.3d at 469 ("This heavy presumption in favor of immunity arises not just from separation-of-powers principles but from practical concerns. In a world with increasingly complex webs of government units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require. The extent to which any particular city, county, port, municipal utility district, school district, or university should pay damages involves policy issues the Legislature is better able to balance."); *Reata Constr. Corp.*, 197 S.W.3d at 375 ("We have generally deferred to the Legislature to waive immunity because the Legislature is better suited to address the conflicting policy issues involved.") (citing *IT-Davy*, 74 S.W.3d at 854 ("We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function.")). In fact, in recent years, the legislature has expressed its intent that "[i]n order to preserve [its] interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Act of May 26, 2001, 77th Leg., R.S., ch.1158, § 8, sec. 311.034, 2001 Tex. Gen. Laws 2570, 2572 (current version at Tex. Gov't Code Ann. § 311.034); *see Reata Constr. Corp.*, 197 S.W.3d at 375 (in section 311.034, "[t]he Legislature has expressed its desire to

24

preserve its interest in managing fiscal matters through the appropriations process by maintaining sovereign immunity unless it has clearly and unambiguously stated otherwise").[10]

The supreme court has also stated that sovereign immunity protects the state and its subdivisions against suits seeking to "control state action." *IT-Davy*, 74 S.W.3d at 855-56; *Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n*, 600 S.W.2d 264, 265 (Tex. 1980); *Griffin v. Hawn*, 341 S.W.2d 151, 152 (Tex. 1960). In *IT-Davy*, the court suggested that the

---

[10] These principles and rationales are further illustrated by the supreme court's jurisprudence regarding contract claims against governmental entities. Sovereign or governmental immunity has long been held to extend to "suits against . . . officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities." *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-56 (Tex. 2002); *see W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 840 (Tex. 1958); *Herring v. Houston Nat'l Exch. Bank*, 253 S.W. 813, 814 (Tex. 1923). The court recently explained that "we defer to the Legislature to waive immunity from contract claims because:"

> · the handling of contract claims against the government involves policy choices more complex than simply waiver of immunity, including whether to rely on administrative processes and what remedies to allow;
>
> · the government should not be kept from responding to changing conditions for the public welfare by prior policy decisions reflected in long-term or ill-considered obligations;
>
> · the claims process is tied to the appropriations process, and the priorities that guide the latter should also inform the former; and
>
> · the Legislature is able to deal not only with these policy concerns but also with individual situations in deciding whether to waive immunity by resolution, cases by case, or by statute.
>
> In sum, in the contract-claims context, legislative control over sovereign immunity allows the Legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public.

*Tooke*, 197 S.W.3d at 332 (citations and quotations omitted).

imposition of contract liability against the state is a form of "controlling state action," *IT-Davy*, 74 S.W.3d at 855-56 (suit "attempt[s] to control state action by imposing liability on the State"), and it has used the phrase to refer to judgments that would effectively direct or control a government official in the exercise of his or her discretionary statutory authority. *See Printing Indus. Ass'n*, 600 S.W.2d at 265-66; *Griffin*, 341 S.W.2d at 152-53; *Short v. W.T. Carter & Bro.*, 126 S.W.2d 953, 962 (Tex. 1939) ("A suit . . . to enjoin the Land Commissioner, when acting within the scope of his authority, from making an award or executing a lease, is a suit to control the action of the State in selling its public lands and is therefore in effect a suit against the State, which cannot be maintained, the State, not having consented to be sued.").[11]

The converse is also well-established: if the complained-of acts of a state official are illegal or outside his statutory authority, "an entity or person whose rights have been violated . . . may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against the State requiring legislative or statutory authorization." *Printing Indus. Ass'n*, 600 S.W.2d at 265-66; *see Texas Highway Comm'n v. Texas Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525, 530-31

---

[11] *See also McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649-51 & n.6 (Tex. App.—Austin 2004, pet. denied) ("A suit that seeks to control a state official's exercise of discretion within her legal authority is a suit to control state action and cannot be maintained without legislative permission"; holding that because challenged actions were within comptroller's discretionary statutory authority, UDJA claim "is seeking to control state action and is a suit against the state"); James L. Hartsfield, Jr., *Governmental Immunity From Suit and Liability in Texas*, 27 Tex. L. Rev. 337, 338 (1949) ("Generally speaking, the rule is that a suit against an officer or department or agency of the state, the purpose or effect of which is to impose liabilities upon, or enforce liabilities against, the state, is in effect a suit against the state, and therefore cannot be maintained without the consent of the sovereign, expressed through legislative action. The prohibition likewise includes actions to require state officers or agencies to perform, or refrain from performing, purely governmental functions, involving their discretion, as distinguished from private acts of individuals.") (quoting *San Antonio Indep. Sch. Dist. v. Bd. of Educ.*, 108 S.W.2d 445 (Tex. Civ. App.—San Antonio 1937, no writ).

26

(Tex. 1963); *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945); *State v. Epperson*, 42 S.W.2d 228, 231 (Tex. 1931). Thus, sovereign immunity is not implicated by a suit to enjoin a government official from acting outside his statutory authority, *Printing Indus. Ass'n*, 600 S.W.2d at 265-66; *Griffin*, 341 S.W.2d at 153-54, nor one alleging a justiciable controversy regarding whether a government official is acting outside his statutory authority and seeking a declaration construing that authority. *Steel Imps.*, 372 S.W.2d at 530-31; *Cobb*, 190 S.W.2d at 712; *see also IT-Davy*, 74 S.W.3d at 855 ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority."). Furthermore, in some circumstances, mandamus may lie to compel a government official to perform a clear mandatory, ministerial statutory duty without implicating sovereign immunity. *Epperson*, 42 S.W.2d at 231.

In such cases, Texas courts have labored to draw two distinctions of relevance here that control whether the claims asserted implicate sovereign or governmental immunity: (1) whether the actions alleged as the basis of the claim fall outside the actor's statutory powers or in fact are within the actor's discretionary statutory powers and thereby seek to "control state action," *see Printing Indus. Ass'n*, 600 S.W.2d at 265-70; *Griffin*, 341 S.W.2d at 153-54; *see also Hendee*, 228 S.W.3d at 368; *McLane Co.*, 148 S.W.3d at 649[12]; and (2) whether the remedy actually establishes a right to money damages. *See, e.g., IT-Davy*, 74 S.W.3d at 856 ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money

---

[12] In other words, the question of immunity substantially overlaps the merits of the complaint that a state official has exceeded his statutory authority. *Cf. Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004) (regarding whether parks and wildlife department acted with gross negligence so as to waive sovereign immunity under the recreational use statute).

damages, such as a contract dispute, as a declaratory-judgment claim."); *see also Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997) ("A state official's illegal or unauthorized actions are not acts of the State.  Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars.  In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages.") (citations omitted).

### *Governmental immunity and chapter 143*

Chapter 143 explicitly authorizes retroactive reinstatement or promotion and back pay awards in certain instances.  A firefighter or police officer who receives a disciplinary suspension has the right to appeal to the civil service commission, which may restore the person to his position and award "full compensation for the actual time lost as a result of the suspension at a rate of pay provided for the position or class of service from which the person was suspended."  *See* Tex. Loc. Gov't Code Ann. § 143.052 (West 1999), § 143.053 (West Supp. 2006); *see also id.* § 143.010(a) (West 1999) (procedures for administrative appeals under chapter 143, including requirement that, "if a fire fighter or police officer wants to appeal to the commission from an action for which an appeal or review is provided by this chapter, [the person] need only file an appeal with the commission within 10 days after the date the action occurred").  Chapter 143 also authorizes administrative appeals to the commission from:  (1) the grading of a promotional exam, *see id.* § 143.034(a) (West 1999) (candidate may appeal grade to commission within five business days); (2) promotional pass-overs, as previously discussed, *see id.* § 143.036(f) (candidate may "apply" with commission for review of "valid reasons" for pass-over that department head filed with

commission), (g) (commission may "set aside" bypass); and (3) a department head's request to involuntarily demote a firefighter or officer. *See id.* § 143.054 (West 1999); *see generally Stauffer v. City of San Antonio*, 344 S.W.2d 158, 160 (Tex. 1961) (describing these delegations of jurisdiction to civil service commissions); *Corbitt v. City of Temple*, 941 S.W.2d 354, 355 n.1 (Tex. App.—Austin 1997, writ denied) (same).

"If a fire fighter or police officer is dissatisfied with any commission decision," he may file a de novo appeal in district court within ten days after the decision is either sent to him by certified mail or personally received by him or his designee. Tex. Loc. Gov't Code Ann. § 143.015(a)-(b) (West 1999). In such appeals, "[t]he district court may grant the appropriate legal or equitable relief necessary to carry out the purposes of this chapter," which "may include reinstatement or promotion with back pay if an order of suspension, dismissal or demotion is set aside." *Id.* § 143.015(b). Further, if "the court finds for the fire fighter or police officer, the court shall order the municipality to pay lost wages to the fire fighter or police officer." *Id.* § 143.015(d).

The City acknowledges that these statutory administrative and appellate remedies constitute "limited waivers" of sovereign immunity. *See, e.g., Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004) (right to judicial review in section 2001.171 of the APA "provides a limited waiver of sovereign immunity" because "the Legislature necessarily understood that state agencies would be sued in court by persons exercising that right"); *Dallas/Fort Worth Int'l Airport Bd. v. Funderburk*, 188 S.W.3d 233, 235-36 (Tex. App.—Fort Worth 2006, pet. granted, judgm't vacated w.r.m.) (statutory remedy provided by Texas Commission on Human Rights Act necessarily provides limited waiver of sovereign immunity). Whiteaker does not purport to have invoked any of the remedies expressly

29

provided under chapter 143, however. *Cf. Nyborg*, 999 S.W.2d at 453-54, 457 (top candidate on promotion list asserted failure-to-promote claim by filing request with commission for investigation, hearing, and determination that promotions of higher-ups had created vacancy to which he was entitled, then appealing adverse commission decision under section 143.015).[13] Instead, he points to numerous Texas decisions over the years accepting that police officers or firefighters can assert claims in court for civil service act violations independent of the act's remedies and recover back pay or other monetary compensation. *See Tijerina v. City of Tyler*, 846 S.W.2d 825, 829 (Tex. 1992) (suit to recover overtime pay allegedly withheld in violation of civil service act); *Lee*, 842 S.W.2d at 649 (suit for declaratory and injunctive relief and back pay by police officers claiming right to promotion to jobs filled by civilians; observing that, "It is well settled that when a city fails to fill a vacant position in accordance with the Civil Service Act, the officers or firefighters who properly should have obtained such jobs are entitled to retroactive promotion and back pay"); *Kierstead v. City of San Antonio*, 643 S.W.2d 118, 121-22 (Tex. 1982) (suit for overtime back pay); *Duckett*, 495 S.W.2d at 886-87 (mandamus action by top remaining candidate on promotion eligibility list to compel fire chief to fill unfilled vacancies arising while list was in effect; affirmed trial court judgment awarding back pay and interest)[14]; *Stauffer*, 344 S.W.2d at 161 (affirming trial court judgment awarding back salary and reinstatement following military leave of absence); *see also*

---

[13] *See also* Tex. Loc. Gov't Code Ann. § 143.009(a) (authorizing commission or a designated commission member to "investigate and report on all matters relating to the enforcement and effect of this chapter . . . and shall determine if the chapter and rules are being obeyed").

[14] *See City of Houston v. Duckett*, 486 S.W.2d 871, 872 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ granted) (noting that trial court judgment later affirmed by supreme court included "pay[ing] back unpaid money above his then salary accruing from [90 days after date of vacancy] plus interest thereon").

*City of San Antonio v. Bullock*, 34 S.W.3d 650, 652 (Tex. App.—San Antonio 2000, pet. denied) (affirming summary judgment that city was required to fill firefighter captain vacancies and award back pay and benefits to candidates on promotion eligibility list at time vacancy arose); *City of Austin v. Castillo*, 25 S.W.3d 309, 314 (Tex. App.—Austin 2000, pet. denied) (suit for back assignment pay allegedly owed); *City of Harlingen v. Avila*, 942 S.W.2d 49, 51 (Tex. App.—Corpus Christi 1997, writ denied) (suit for back pay arising from city's implementation of seniority pay system); *City of Austin v. Austin Prof'l Firefighters Ass'n*, 935 S.W.2d 179, 183 (Tex. App.—Austin 1996, no writ) (vacated pursuant to settlement) (suit for declaratory and injunctive relief regarding calculation of longevity pay); *City of Lubbock v. Eckles*, 888 S.W.2d 621, 623 (Tex. App.—Amarillo 1994, writ denied) (suit regarding alleged underpayment of overtime pay); *International Ass'n of Fire Fighters, Local Union No. 624 v. City of San Antonio*, 822 S.W.2d 122, 131-32 (Tex. App.—San Antonio 1991, writ denied) (awarding retroactive promotion and back pay to firefighters on promotion eligibility list who had primary right to promotions to vacancies improperly filled by civilians; observing that "[t]he case law is replete with examples where firefighters have been provided retroactive promotion and back pay where it was found that the City in question failed to fill a vacant position within the sixty or ninety days as required by the Civil Service Act"); *City of San Antonio v. Kuykendall*, 749 S.W.2d 169, 170-71 (Tex. App.—San Antonio 1988, writ denied) (suit regarding amount of injury leave to which firefighter was entitled); *Burkhart v. Moore*, 580 S.W.2d 108, 109-11 (Tex. Civ. App.—Eastland, no writ) (mandamus to compel promotion following invalid abolition of position); *Michna*, 521 S.W.2d at 332-35 (mandamus action by police lieutenants on promotion

eligibility list challenging city's failure to fill captain vacancies before abolishing positions by ordinance; held that lieutenants were entitled to retroactive promotion and back pay beginning ninety days after vacancy until position was abolished); *Bostick v. Owens*, 423 S.W.2d 471, 471-72 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.) (city promoted top candidate on promotion eligibility list created after vacancy arose; held instead that top candidate on promotion eligibility list existing at time vacancy arose was entitled to retroactive promotion and back pay effective on date when promotion was given other candidate); *see also Klinger*, 902 S.W.2d at 673-74 (stating rule as "[w]hen a city fails to fill a vacancy in compliance with the [civil service act], the person who properly should have obtained the promotion is entitled to retroactive promotion and back pay, effective the last day the city could lawfully have filled the vacancy").

Whiteaker appears to view these decisions as applications of *Stauffer v. City of San Antonio*. 344 S.W.2d 158 (Tex. 1961). *Stauffer* involved a suit by a firefighter to compel reinstatement after military leave. The civil service act guaranteed a right to reinstatement following military leave if the firefighter or police officer was physically and mentally fit for duty. The district court had rendered judgment for the firefighter ordering reinstatement and awarding back pay. The court of appeals, viewing the suit as an attempt to appeal a civil service commission determination for which the act (as it then existed) did not provide a right of appeal, held under *City of Amarillo v. Hancock*, that the district court lacked subject-matter jurisdiction. *See City of San Antonio v. Stauffer*, 331 S.W.2d 443, 446-47 (Tex. Civ. App.—San Antonio 1959, writ granted). The supreme court reversed the court of appeals. Although it determined that the act did not provide an *administrative* remedy for the firefighter or an appeal

from the commission to district court, the supreme court held that the district court had general subject-matter jurisdiction to determine and enforce the statutory right because the legislature had not placed that jurisdiction in another tribunal. "Since the power to hear and determine that question in a judicial sense is not conferred by law upon some other tribunal," the court reasoned, "the district court has jurisdiction to decide the same from a preponderance of the evidence." 344 S.W.2d at 161 (citing Tex. Const. art. V, § 8). The supreme court affirmed the district court's judgment awarding retroactive reinstatement and back pay. *Id.*

*Stauffer* did not explicitly address the possible implications of governmental immunity, nor did any of the numerous other cases cited above. Inasmuch as governmental immunity goes to subject-matter jurisdiction and thus can be raised *sua sponte*, *see Hendee*, 228 S.W.3d at 375, the outcomes in these cases arguably imply that immunity does not bar the claims. *See Cassidy v. City of Balch Springs*, 223 S.W.3d 612, 615 (Tex. App.—Dallas 2007, pet. filed) (suggesting as much). Yet these cases are silent regarding the courts' reasoning—whether the courts believed the claims did not implicate governmental immunity, or that immunity was implicated but the civil service act waived it, or, as the City suggests, the courts simply never considered these questions.

Regardless, any potential governmental-immunity implications from these cases have been limited by a more recent decision of the Texas Supreme Court. In *City of Houston v. Williams*, a group of retired firefighters sought a declaratory judgment that the city had violated chapter 143 in improperly calculating lump-sum payments of accrued vacation and sick leave paid upon termination and in improperly deducting alleged overpayments of overtime. 216 S.W.3d 827,

33

828 (Tex. 2007) (per curiam); *see* Tex. Loc. Gov't Code Ann. §§ 142.0017, 143.115-.116. The city filed a plea to the jurisdiction asserting governmental immunity, which the district court denied and the court of appeals affirmed. The court of appeals had reasoned that (1) the general "sue and be sued" and "plead and be impleaded" language of section 51.075, local government code, waived the city's governmental immunity and (2) the city had no immunity from the retirees' declaratory judgment claim because it sought construction of the pertinent statutes and the trial court had purported to reserve determination of damages for a later date. The supreme court reversed. It relied on *Tooke* in regard to the first ground. As for the second ground, the court held that the firefighters' declaratory judgment claim actually sought money damages and, therefore, implicated the city's governmental immunity. *Williams*, 216 S.W.3d at 828-829 (citing *IT-Davy*, 74 S.W.3d at 856).

The supreme court reasoned that "[t]he only injury the retired firefighters allege has already occurred, leaving them with only one plausible remedy—an award of money damages." *Id.* at 829. It further observed that because none of the retired firefighters asserted rights to future payments, they lacked standing to seek a prospective statutory interpretation on behalf of those currently employed. *Id.* The supreme court further explained that whether the plaintiffs sought a declaration regarding a "legitimate question of statutory interpretation" was irrelevant, because, "[I]n every suit against a governmental entity for money damages, a court must first determine the parties' contract or statutory rights; if the sole purpose of such a declaration is to obtain a money judgment, immunity is not waived." *Id.* As for the trial court's reservation of a damages determination, the court observed that "governmental immunity does not spring into existence when a damages award is finally made; it shields governments from the costs of any litigation leading up to that goal." *Id.*

34

The supreme court reversed but remanded to the trial court "for further proceedings consistent with this opinion" to consider the implications of the newly-enacted sections 271.151-.160 of the local government code, which waives immunity from suit for certain contract claims against governmental entities. *Id.*

*Williams* has at least two important potential implications for Whiteaker's claims. First, while it did not explicitly address the issue or the implications of prior decisions like *Stauffer*, *Williams*'s holding is logically inconsistent with the existence of a general waiver of governmental immunity for claims arising under chapter 143. *See Cassidy*, 223 S.W.3d at 614-15 (noting that "[a]lthough the supreme court did not directly address whether a general waiver of immunity existed under the civil service statutes, the absence of a general waiver is clearly implied by the outcome" and observing that outcomes in prior supreme court cases "arguably conflict with the outcome in *Williams*"); *see also Bell v. City of Grand Prairie*, 221 S.W.3d 317, 323 (Tex. App.—Dallas 2007, no pet.) (suggesting that the "import of the *Williams* decision" is "that *Stauffer* and the court's other opinions reaching the merits under the Civil Service Act were incorrectly decided because the court lacked jurisdiction"). Second, *Williams* holds that a declaration of statutory rights concerning an alleged underpayment of accrued vacation and sick leave owed under chapter 143—a type of back pay—is a claim for "money damages" that implicates governmental immunity.

The City argues that *Williams* "makes it abundantly clear . . . that a request for back pay is a request for monetary relief, which requires a finding here that sovereign immunity is implicated." In *Bell*, which involved claims that a municipality underpaid firefighters in violation of section 143.041 of the local government code, the Dallas Court of Appeals viewed *Williams* as

creating a dichotomy between declaratory and injunctive claims regarding *past* statutory violations (which, it concluded, implicate governmental immunity because the "only plausible remedy" is money damages) and those seeking only to compel the city to follow the law in the future (which, it held, do not implicate immunity). *Bell*, 221 S.W.3d at 324-326. Thus, the court held that the district court had subject-matter jurisdiction over the firefighters' claims to the extent they concerned future violations and did not seek money damages, but not to the extent the claims concerned past violations. *Id.*; *see also City of Seagoville v. Lytle*, 227 S.W.3d 401, 410-412 (Tex. App.—Dallas 2007, no pet.) (employing similar analysis in holding that declaratory-judgment, mandamus, and injunctive relief claims alleging termination in violation of local government code sections 614.022 and 614.023 were barred by governmental immunity to the extent they sought back pay or back benefits, but not to the extent they sought prospective reinstatement only); *City of Dallas v. Albert*, 214 S.W.3d 631, 633, 637 (Tex. App.—Dallas 2006, pet. filed) (similar analysis in suit alleging failure to pay police officers and firefighters in accordance with voter-approved pay referendum; suit barred by governmental immunity to the extent it sought back pay and benefits); *City of Dallas v. Martin*, 214 S.W.3d 638, 640, 644 (Tex. App.—Dallas 2007, pet. filed) (same).

Whiteaker urges that we should apply the Dallas court's reasoning and hold that, at a minimum, the district court had subject-matter jurisdiction over his claims to the extent they seek prospective relief. We agree. Liberally construing his pleadings, Whiteaker seeks both prospective declaratory, injunctive, and mandamus relief regarding his rights to the promotion from the time of judgment going forward and retrospective relief regarding his rights to back pay and benefits he would have received if he had been promoted on April 29, 2006. Whiteaker thus does not have the "only conceivable remedy" of money damages, *see Williams*, 216 S.W.2d at 827, because his claims

36

include a declaration of his statutory rights to the promotion and to compel the City's compliance with these rights in the future. *See Bell*, 221 S.W.3d at 324-25. At least to this extent, Whiteaker's causes of action for declaratory, injunctive, and mandamus relief do not implicate the City's governmental immunity. *City of Seagoville*, 227 S.W.3d at 410-412; *Albert*, 214 S.W.3d at 637; *Martin*, 214 S.W.3d at 634; *Bell*, 221 S.W.3d at 324-25.

### Does Whiteaker seek money damages?

As for the other aspects of his claims, Whiteaker questions the assumption that requests for back pay or other retrospective monetary relief categorically constitute claims for "money damages" that implicate governmental immunity. He argues that such awards are not considered money damages when awarded as equitable relief to prevent unjust enrichment. *See, e.g., Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999) (characterizing award of money to prevent unjust enrichment as "an equitable remedy"). In the context of government employment, Texas courts have distinguished equitable back-pay awards from those constituting money damages based upon the reasons why the back pay is sought: whether the pay sought is for work actually performed or services provided to the employer, which is actionable in equity, or is sought to compensate for the loss of pay resulting from the employee being wrongfully prevented from working for the employer, which is money damages. *See Nueces County v. Ferguson*, 97 S.W.3d 205, 220-21 & n.21 (Tex. App.—Corpus Christi 2002, no pet.) ("A claim for back pay, *other than one to recover for services rendered or to prevent unjust enrichment,* is a claim for damages at law.") (emphasis added); *O'Bryant v. City of Midland*, 949 S.W.2d 406, 414 (Tex. App.—Austin 1997) (op. on reh'g), *aff'd in part and rev'd in part on other grounds*, 18 S.W.3d 209 (Tex. 2000) (discussing distinction

between equitable and legal back pay claims and holding that request for back pay for officers who had been prevented from serving as licensed peace officers was a claim for damages).[15] This distinction is consistent with the supreme court's recognition, at least historically, that suits to recover money or other property wrongfully taken or withheld by state officials from their rightful owners do not implicate sovereign immunity because, in concept, the disputed property never belongs to the state. *Epperson*, 42 S.W.2d at 230 (if tax collector is "wrongfully withholding funds" owed as commission for services provided by private party in collecting delinquent taxes, "action to compel him to pay the same to a party entitled thereto is not one against the state which can only be brought with the consent of the state."); *see also Dodgen*, 308 S.W.2d at 841-41 (distinguishing

---

[15] This Court explained the distinction in *O'Bryant*, in the context of a constitutional claim:

> [T]o determine whether the officers' request for back pay under the constitution is an equitable claim, we look to the general distinction between actions at law and actions in equity. Because Texas courts today may entertain both types of actions in one lawsuit, the distinction is difficult to discern in modern caselaw. Historically, the difference between the two types of actions depended upon the nature of the relief desired. Typically, an action "at law" is one brought for a money judgment while an action "in equity" is one brought for other types of relief, such as injunction, specific performance, rescission, or cancellation. It is also instructive to look to the parties' characterization of the relief sought in their pleadings to determine the legal character of an action.

> In light of these principles, we conclude the officers' request for back pay for violations of their constitutional rights is essentially an action at law. The officers do not seek money to compensate them for services rendered; nor do they seek to prevent the defendants from being unjustly enriched. Instead, they seek money because they were prevented from conferring a certain type of benefit to the defendants (i.e. serving as licensed police officers), a theory not based in traditional equitable principles. Our conclusion is consistent with the general rule that an action for monetary relief is an action at law rather than in equity. . . .

*Id.* (citations omitted).

38

*Epperson* and prior cases on basis that "[i]n that class of cases it is held that suits for property alleged to be unlawfully or wrongfully withheld from the rightful owners by officers of the state are not suits against the sovereign itself and may be maintained without permission of the sovereign."); *cf. State v. Lain*, 349 S.W.2d 579, 581-82 (Tex. 1961) ("One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for and on behalf of the state . . . . The rationale of the rule is that in such cases possession is not in fact held for the sovereign but is wrongfully held.").

We need not further consider the potential applicability of these principles because Whiteaker's claims for back pay and back benefits would not be considered an equitable remedy. Whiteaker does not seek salary or benefits owed for work he actually performed in the captain position that became vacant in February 2006, but compensation for salary and benefits of which he was deprived through the City's allegedly wrongful actions preventing him from working in that position. *See O'Bryant*, 949 S.W.2d at 414.

Whiteaker also suggests that his claims for back pay and back benefits may be recoverable through mandamus without implicating governmental immunity Mandamus will issue to compel a public official to perform a ministerial act—one for which "the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). Such ministerial statutory duties sometimes may entail the payment of money and, as the supreme court

has long recognized, sovereign or governmental immunity does not bar a mandamus action to compel the performance of such duties. *See, e.g., Jernigan v. Finley*, 38 S.W. 24, 25 (Tex. 1896).[16]

Whiteaker cites *City of Waco v. Bittle* for the broad principle that governmental immunity does not bar a mandamus action seeking back pay under chapter 143, nor a declaratory-judgment action to declare the claimant's right to such payment. 167 S.W.3d 20 (Tex. App.—Waco 2005, pet. denied). The implications of *Bittle* are more limited. *Bittle* involved a

---

[16] In *Jernigan*, a county treasurer sought mandamus from the supreme court to compel the comptroller to make statutorily-required pro rata distributions from school fund revenues. 38 S.W. 24, 25 (Tex. 1896). Rejecting the attorney general's argument that the suit was barred by sovereign immunity, the court reasoned that, upon the local authority's satisfaction of the statutory conditions for payment:

> it becomes the plain duty of the comptroller to draw his warrant for the sum so apportioned. It is an imperative obligation, enjoined upon him by the lawmaking power of the state. In pursuance of the power conferred upon it by amended section 3 of article 5 of the constitution, the legislature has given this court jurisdiction to issue the writ of mandamus against any state officer, the governor excepted; that is, it has authorized a suit against any such officer to compel him to perform the duties imposed upon him by law. It can hardly be said that such a suit is one against the state; but, if it be such in any sense, it is, nevertheless, proper and maintainable, because the state has authorized it to be brought. It is otherwise when the legislature has not enjoined [required] the performance of the act, and the interests of the state, either in its property or funds, would be injuriously affected by awarding the writ.

*Id.* at 25; *see Laidlaw Bros. v. Marrs*, 273 S.W. 789, 792 (Tex. 1925) (quoting this holding of *Jernigan* and stating that "[t]his holding is clearly correct, and has been so uniformly applied by this court that seldom is the question raised or referred to in the cases"). *See also Jessen Assocs. v. Bullock*, 531 S.W.2d 593, 601 (Tex. 1975) (orig. proceeding); *Cramer v. Sheppard*, 167 S.W.2d 147, 156 (Tex. 1942) (orig. proceeding); *Carpenter v. Sheppard*, 145 S.W.2d 562, 569 (Tex. 1940); *Burttschell v. Sheppard*, 69 S.W.2d 402, 404 (Tex. 1934); *Woods v. Terrell*, 285 S.W. 293, 295 (Tex. 1926); *Freeman v. Terrell*, 284 S.W. 946, 949 (Tex. 1926); *Fulmore v. Lane*, 140 S.W. 405, 412 (Tex. 1911); *Terrell v. Sparks*, 135 S.W. 519, 522 (Tex. 1911); *Escavaille v. Stephens*, 119 S.W. 842, 843 (Tex. 1909).

firefighter's administrative appeal from an indefinite suspension. *See* Tex. Loc. Gov't Code Ann. §§ 143.052, .053. In such appeals, as discussed above, chapter 143 explicitly authorizes the award of "full compensation for the actual time lost as a result of the suspension at the rate of pay provided for the position or class of service from which the person was suspended." *Id.* § 143.053(f). The appeal was heard by an independent hearing examiner, *see id.* § 143.057, which ordered reinstatement with back pay, as permitted by section 143.053. Claiming that the city had not paid him the back pay he had been awarded, the firefighter sued for a declaration that the city had failed to comply with the hearing examiner's decision and section 143.053(f), coupled with mandamus compelling the city to pay the back pay and benefits it owed. The court of appeals rejected the city's assertion of governmental immunity because the firefighter's claims sought to compel the city to comply with the mandatory requirements of section 143.053(f). *Bittle*, 167 S.W.3d at 26-27.

Contrary to Whiteaker's arguments, *Bittle* does not suggest that back pay is generally recoverable through mandamus for chapter 143 violations. The legislature necessarily waived governmental immunity for administrative back pay awards made by civil service commissions or hearing examiners under section 143.053(f), and *Bittle*'s holdings must be viewed in that context. However, *Bittle* is consistent with the established principles that mandamus may lie to enforce ministerial duties of governmental entities to make certain statutorily-required payments and that such actions do not implicate governmental immunity. *Cf. Austin Nat'l Bank of Austin v. Sheppard*, 71 S.W.2d 242, 244 (Tex. 1934) (mandamus to enforce payment of claim authorized and appropriated by legislature).

41

On the other hand, Texas courts have long recognized that a department head has a mandatory, nondiscretionary statutory duty under chapter 143 to fill a vacancy with an eligible candidate. *See Townsend*, 622 S.W.2d at 563; *Duckett*, 495 S.W.2d at 886-87; *Klinger*, 902 S.W.2d at 673-74. Under chapter 143, this duty necessarily entails paying the appointee the salary and benefits attendant to other positions at that classification. Tex. Loc. Gov't Code Ann. § 141.041. As we have seen, even while these statutory duties require monetary payments, governmental immunity does not bar a mandamus action (or a declaratory or injunctive claim) to the extent it seeks to compel compliance with these statutory duties prospectively. Nor is it clear, under cases such as *Jernigan*, or under the contemporary rationales for the doctrine, whether governmental immunity would, in all circumstances, be implicated by a mandamus action to enforce these mandatory statutory duties with regard to payments that have already accrued; i.e., to compel both retroactive promotion and back pay to a position to which a candidate is entitled. Such action would not necessarily infringe on municipalities' budgetary processes by imposing liability for improvident actions—the modern focus of sovereign and governmental immunity—but might be said merely to enforce the previous policy and budgetary decisions of the legislature and the municipal government, as manifested in the duties imposed by chapter 143, the municipal ordinances creating the classified positions, and the expressed will of local voters that their fire or police departments should be governed by chapter 143.

Several of the pre-*Williams* cases Whiteaker cites, while not explicitly addressing governmental immunity, are consistent with these observations. Among the pre-*Williams* cases Whiteaker cites are those involving allegations that a candidate was deprived of a promotion to

which he or she claimed a right under the civil service act and courts have awarded retroactive promotion and back pay. These cases fall into essentially three distinct categories. The first involves failure-to-promote claims where a municipality has allegedly failed altogether to fill a vacancy as required by the civil service act. *See, e.g., Townsend*, 622 S.W.2d at 563; *Duckett*, 495 S.W.2d at 886-87; *Bullock*, 34 S.W.3d at 652; *Michna*, 521 S.W.2d at 332-35. The second involves failure-to-promote claims where the municipality has allegedly acted wrongfully in attempting to abolish or replace a classified position with a non-classified one. *See Lee*, 842 S.W.2d at 649; *International Ass'n of Fire Fighters, Local Union No. 624*, 822 S.W.2d at 131-32. The third category involves not the elimination of a classified position or the failure to fill it, but the promotion of another firefighter or police officer to a position to which the plaintiff claims entitlement under the act. *Bostick*, 423 S.W.2d at 471-72. The City cites *Townsend* and *Bullock* (from the first category) as support for the proposition that "lawsuits seeking to enforce the mandates of the CSA that do not request money damages, do not implicate sovereign immunity."

We need not decide whether mandamus actions in the first two categories of cases might survive *Williams* because Whiteaker's claim falls within the third category, and, we conclude, this type of claim implicates the City's governmental immunity. Whiteaker's suit, as currently pled, complains not that the City failed to perform a mandatory statutory duty, but that it performed that duty improperly—by appointing another candidate to the February 2006 captain vacancy when he contends that slot should have instead gone to him. In substance, Whiteaker seeks his losses caused by the City's actions. This is a claim for money damages that implicates the City's governmental

43

immunity. *See Tooke*, 197 S.W.3d at 331-32 (governmental immunity serves to "shield the public from the costs and consequences of improvident actions of their governments").

We conclude that Whiteaker's declaratory, injunctive and mandamus causes of action implicate the City's governmental immunity to the extent they seek back pay and back benefits accruing prior to judgment.[17] *See City of Seagoville*, 227 S.W.3d at 410-412.

### *Does chapter 143 waive immunity for Whiteaker's claims?*

We also conclude that the legislature has not waived the City's governmental immunity against Whiteaker's claims for back pay and other retrospective monetary relief.

We again emphasize the legislature's mandate that, "In order to preserve [its] interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (West Supp. 2006); *see Reata Constr. Corp.*, 197 S.W.3d at 375. Whiteaker points out that this principle existed at common law even prior to section 311.034's enactment, *see Taylor*, 106 S.W.3d at 696 (citing *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1981)), and that it is not an end in itself, but merely a guide for ascertaining whether the legislature intended to waive sovereign immunity. *See Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995). He urges that even after the enactment of section 311.034, the supreme court has recognized that "clear and unambiguous" legislative intent to waive immunity need not be explicitly stated in a statute, but may be inferred "when the provision in question would be meaningless unless immunity were

---

[17] The same would be true for interest awarded on these sums.

44

waived." *Taylor*, 106 S.W.3d at 697. Examples include statutes providing claims or right or relief applicable only against government entities. *See Fernandez*, 28 S.W.3d at 4-6; *Barfield*, 898 S.W.2d at 295-297; *see also Mega Child Care, Inc.*, 145 S.W.3d at 198. Whiteaker urges that, similarly, his statutory right to promotion under section 143.036 would be "meaningless" without a right to recover back pay if he is denied a promotion in violation of the provision. He adds that "six decades of case law authorizing back pay claims under these statutes" are consistent with this implied legislative intent because "any other position would mean a city could violate the Civil Service Act and similar statutes governing *only municipalities* with impunity and claim that it was immune from suit."[18]

We are not persuaded that the legislature has waived the City's governmental immunity against Whiteaker's claims for back pay and other retrospective monetary relief. Chapter 143 does provide certain administrative and appellate remedies that, to this limited extent, waive its governmental immunity. *See Mega Child Care, Inc.*, 145 S.W.3d at 198; *Funderburk*, 188 S.W.3d at 235-236. Whiteaker has not attempted to bring his claims within these waivers, however.

---

[18] Whiteaker also attaches importance to *City of Sweetwater v. Waddell*, 218 S.W.3d 80, 81 (Tex. 2007), which was decided after *Williams*. In *Waddell*, a group of firefighters alleged that the city had failed to promote Waddell in accordance with section 143.036 and failed to pay each of them the same base salary as required by section 143.041. They sought a declaration that the city had violated these provisions, an order to promote Waddell, and "monetary damages." The city asserted a plea to the jurisdiction based on governmental immunity, which the trial court granted. The court of appeals reversed, holding the governmental immunity was waived by "sue and be sued" language in the city charter. The supreme court reversed in light of *Tooke* and remanded to the trial court. 218 S.W.3d at 81. "On remand," the supreme court instructed, "the trial court may consider, among other things, whether the City's immunity from suit is waived by sections 271.151-.160 of the Local Government Code *or other statutory provisions*." *Id.* (emphasis added). At most, *Waddell* may imply that the supreme court has not squarely decided whether chapter 143 waives governmental immunity as to claims under section 143.036 or section 143.041, but it provides no particular guidance for resolving such issues.

45

*Cf. Nyborg*, 999 S.W.2d at 453-54. We agree with the reasoning of the Dallas Court of Appeals that *Williams* is logically inconsistent with the existence of a general waiver of immunity under chapter 143. *See Cassidy*, 223 S.W.3d at 614; *Bell*, 221 S.W.3d at 323. Nor can we discern any other basis in chapter 143—explicit or implicit—for concluding that the legislature clearly and unambiguously intended to waive governmental immunity against a claim like Whiteaker's in particular.

Whiteaker's rights under section 143.036 are not rendered "meaningless" if his back pay claim is barred by governmental immunity. We have held that his *prospective* claims to enforce his rights against the City from the time of judgment forward are not barred. *Bell*, 221 S.W.3d at 325. A claimant like Whiteaker could thus avoid accruing lost pay by promptly seeking to compel a municipality to comply with section 143.036 once a promotion-related dispute arises. Whiteaker tacitly acknowledges the availability of such a remedy, urging that a "nightmare" of claimants seeking temporary restraining orders to prevent disputed promotions from taking effect would result if governmental immunity bars his back pay claim. Whatever the merits of this remedy as a matter of policy, its availability compels us to conclude that, as a matter of statutory construction, the legislature did not evince clear and unambiguous intent to waive the City's governmental immunity against Whiteaker's claims for retrospective monetary relief outside any administrative remedies provided in chapter 143.

### Disposition of governmental immunity issues

In summary, we have concluded that Whiteaker's claims do not implicate the City's governmental immunity to the extent they seek prospective declaratory, injunctive and mandamus relief from the date of judgment forward. We also hold that, as pled, Whiteaker's claims are barred

by governmental immunity to the extent they seek back pay, back benefits, other retrospective monetary relief, or declarations or orders directed to such relief.

Where, as here, we conclude that a plaintiff's pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction over all or part of a suit, our proper remedy depends upon whether that jurisdictional defect can be cured. We must affirm the district court's denial of the City's plea to the jurisdiction if the pleadings do not affirmatively demonstrate *incurable* defects in jurisdiction. *Miranda*, 133 S.W.3d at 226-27. In such an instance, the proper remedy is not to dismiss but to afford Whiteaker the opportunity to amend. *Id*.

We conclude that Whiteaker is entitled to the opportunity to amend. His pleadings and affidavit testimony allude to facts suggesting an alternative theory for seeking retroactive promotion to a captain position and back pay that might not implicate the City's governmental immunity. Specifically, Whiteaker alleges and testifies that (1) on January 14, 2006, Captain Billy Wusterhausen, who occupied one of the two captain positions in the training division, was promoted to battalion chief, thus creating another captain vacancy in training; (2) Captain Johnnie Bohac, who originally had been promoted from the October 2005 promotional eligibility list to fill a captain slot in suppression, began working in the vacant captain position in the training division; (3) Captain Bohac continues to work in that position. The effect of these actions, Whiteaker suggests, has been to create another captain vacancy in suppression. There is no indication in the record that this alleged vacancy in suppression has ever been filled. Depending on the timing of this alleged vacancy, whether it was ever filled, and the merits of Whiteaker's contentions regarding his rights under section 143.036, Whiteaker may be able to state the type of claim presented in *Townsend* and *Duckett*. *See, e.g., Townsend*, 622 S.W.2d at 563; *Duckett*, 495 S.W.2d at 886-87; *Bullock*, 34 S.W.3d at 652; *Michna*, 521 S.W.2d at 332-35. We hold that Whiteaker is entitled to

47

the opportunity to replead, if possible, to state such a claim. Again, we express no opinion at this juncture regarding whether this specific type of claim would implicate the City's governmental immunity under *Williams* and other applicable law, as the parties have not yet briefed or developed that issue. We leave that question for further development on remand.[19] *See Hendee*, 228 S.W.3d at 383; *Davis*, 137 S.W.3d at 335 & n.16.

On this basis, the district court would not have erred in denying the City's plea to the jurisdiction regarding governmental immunity. We accordingly overrule, in their entirety, the City's governmental immunity issues.

**Exhaustion of remedies**

The City asserts, "in the alternative," that the district court lacked subject-matter jurisdiction because Whiteaker failed to exhaust administrative remedies with the Commission before filing suit. We disagree.

Our analytical starting point regarding this issue is article V, section 8 of the Texas Constitution. It provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive,

---

[19] In its motion for rehearing, the City argues that the Texas Supreme Court's recent decision in *Texas A&M Univ. Sys. v. Koseoglu*, No. 05-0321, 223 S.W.3d 835, 50 Tex. Sup. Ct. J. 1213, 2007 Tex. LEXIS 838 (Tex. Sept. 7, 2007), compels us to render judgment dismissing Whiteaker's claims without opportunity to replead. We disagree. *Koseoglu* merely applies the established principle that "[a]s is the case with special exceptions, a pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect." *Id*. at *10; *see also Miranda*, 133 S.W.3d at 228 (instructing that a plaintiff's suit should be dismissed when either the pleadings alone or the jurisdictional evidence demonstrates that the plaintiff's suit is incurably barred by sovereign immunity). Under these principles, the supreme court held that "[r]emanding this case would serve no legitimate purpose because Koseoglu's underlying claim is a breach of contract claim [against the state]. Merely pleading more facts in support of the breach of contract claim will not overcome Texas A&M's immunity from suit." *Koseoglu*, 223 S.W.3d at ___, 2007 Tex. LEXIS 838, at *10. As explained above, the pleadings and jurisdictional evidence here do not affirmatively demonstrate incurable jurisdictional defects.

appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. The legislature has provided by statute that district courts possess "the jurisdiction provided by Article V, Section 8, of the Texas Constitution," and "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. §§ 24.007-.008. Thus, "[c]ourts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).

Unlike courts, "there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them." *David McDavid Nissan*, 84 S.W.3d at 220. "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Id.* The courts are not divested by an agency of the subject-matter jurisdiction they would otherwise possess to adjudicate a dispute unless the legislature has granted the agency exclusive jurisdiction, or the sole power to make the initial determination in the dispute. *Id.* at 221; *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied).

If an administrative agency has exclusive jurisdiction over a determination, a party must exhaust all administrative remedies before seeking judicial review of the agency's decision. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). Until the party has satisfied this exhaustion requirement, the trial court lacks subject-matter jurisdiction and must dismiss those claims without prejudice to refiling. *Id.* Whether an agency has exclusive jurisdiction is determined by construction

of the relevant statutory scheme. *See id.* The legislature's intent to grant an agency the sole authority to make the initial determination in a dispute may be reflected in either express statutory language to that effect or the overall statutory scheme. *Id*. at 340-42.

In *Stauffer*, as previously noted, the supreme court held that the legislature has not delegated civil service commissions general authority to decide issues affecting rights under chapter 143. 344 S.W.2d at 160. To the contrary, the court held, the legislature had authorized only (1) "a hearing and decision by the Commission whenever a department head is dismissed . . . or an officer is indefinitely suspended," (2) "[a] hearing . . . before an employee is demoted," (3) appeals by "any applicant who is dissatisfied with the grading of his examination," and (4) "[p]ower to review the action of a department head in passing over candidates with higher grades or in ordering a disciplinary suspension. *Id.*; *see* Tex. Loc. Gov't Code Ann. §§ 143.034, .036, 052-.054; *Corbitt*, 941 S.W.2d at 355 n.1. Other issues arising under chapter 143, the court reasoned, remained within the district court's general jurisdiction (as opposed to that of the commission) under article V, section 8. *Stauffer*, 344 S.W.2d at 161; *cf. Bexar Metro. Water Dist.*, 156 S.W.3d at 90. We are bound to follow this explicit holding regarding the scope of commission jurisdiction unless and until the supreme court instructs us otherwise.

The City condemns Whiteaker for "laying behind the log" after the Commission created the April 2006 promotion eligibility list and began making promotions from it, suggesting that he should have instead of filed a complaint regarding these actions with the Commission. But the City fails to identify any specific statute giving the Commission *exclusive* jurisdiction over the issues Whiteaker has raised. *See Stauffer*, 344 S.W.2d at 160.

Terming it "an exclusive remedy" for "dispute[s] aris[ing] in regard to the creation of an eligibility list," the City first points to the administrative appeal under section 143.034, but this provision is explicitly limited to disputes concerning the grading of promotional exams. *See* Tex. Loc. Gov't Code Ann. § 143.034(a). In its reply brief, the City, similarly unpersuasively, attempts to pigeonhole Whiteaker's allegations into two other administrative remedies under chapter 143. It suggests that Whiteaker was required to exhaust the remedy provided under section 143.036, which authorizes a bypassed top candidate on a promotion list to seek commission review of the department head's proffered reasons for refusing the promotion. *Id.* § 143.036(f). But, just as in *Duckett*, it is undisputed that Chief Hodge "did not purport to invoke this statutory procedure for rejecting [Whiteaker] as an otherwise eligible person," *Duckett*, 495 S.W.2d at 887, but took the position that Whiteaker's right to a promotion had been exhausted. The City also suggests that Whiteaker is challenging an involuntary demotion, *see* Tex. Loc. Gov't Code Ann. § 143.054, but, again, Hodge's actions did not implicate the asserted administrative remedy. Department heads cannot unilaterally demote, but may only recommend and request in writing that the civil service commission take such an action. *Id.* § 143.054(a)-(b). If the commission believes that probable cause exists for ordering the demotion, it must give the affected firefighter or police officer notice and an opportunity for "a full and complete public hearing." *Id.* § 143.054(c)-(d). Leaving aside the factual disputes concerning whether Whiteaker was promoted or subsequently "demoted," any actions by Hodge potentially constituting a "demotion" were undisputedly not made in accordance with the procedures for involuntary demotions, and Whiteaker did not fail to exhaust any administrative remedies that would have applied in such a case. *Cf. Duckett*, 495 S.W.2d at 887.

We overrule the City's exhaustion-of-remedies issue.

## CONCLUSION

We have overruled the City's issues concerning standing and exhaustion of remedies. While Whiteaker's suit as pled is barred by governmental immunity to the extent it seeks back pay or other retrospective monetary relief, we conclude that he is entitled to an opportunity to replead his claims. On this basis, we overrule the City's issues regarding governmental immunity and affirm the district court's order denying the City's plea to the jurisdiction.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring Opinion by Justice Patterson

Affirmed on Motion for Rehearing

Filed:   November 16, 2007